LEW HOWARD v. ANDREWS MANUFACTURING COMPANY, INC.

(Filed 20 December, 1919.)

1. **Railroads— Excavations— Negligence— Cattle— Grazing — Rights of Way.**

    Where the roadbed of a railroad company runs through the farm lands of the owner of the fee, the company must use efforts to protect the cattle of the owner, who has the right to graze his cattle upon his own land and upon the right of way not used for railroad purposes, and the company is liable in damages for the killing of a mare belonging to the wife of the owner of the fee, by reason of the caving in of an embankment to a cut caused by its having been left in a negligent condition.

2. **Same—Damages—Evidence—Proximate Cause.**

    It is evidence that the cut of a railroad company has been left in an actionable negligent condition, when it tends to show that originally the embankment had the proper outward slope, but thereafter, in making a fill in another place, the company excavated the sides of the embankment so as to cause the top to overhang; and evidence that the wife of the owner of the fee had a horse which she grazed on her husband's lands, and one morning it was found injured and dead where the overhanging bank had caved in during the night, with hoof tracks above at the edge of the caved-in embankment, and on the dirt below, where the horse was found,

a packed place as if something had fallen on it, etc., it is sufficient for the jury to find that the killing of the horse was caused by the defendant's negligence, and as a result which might reasonable have been anticipated.

**3. Appeal and Error—Witness Tendered—Cross-examination—Record— Purpose—Result.**

The question as to whether a party has the right to cross-examine a witness who was only tendered, as a witness for the party tendering him will not be considered on appeal, when the purpose of the examination and the expected result is not made to appear.

APPEAL by defendant from *Webb, J.,* at the June Special Term, 1919, of CHEROKEE.

This is an action for damages for the alleged negligent killing of a mare owned by the plaintiff. The negligence alleged as a ground for the action was that the defendant so negligently constructed, kept, and maintained its line of railway that at a point where same passed through and over the lands owned by D. F. Howard, husband of the plaintiff, the line of railway passed through a cut so negligently constructed and maintained that for a space of about fifteen feet the bank of said cut projected over the roadbed for a distance of eighteen inches, and the ground and earth underneath said cut was hollowed out and the top of the cut left in an insecure and unstable condition; that the distance from the top of the cut to the roadbed underneath was ten feet, whereas, had said cut been skillfully constructed, there should have been a slope from the top of the cut to the roadway underneath. That on 1 June, 1917, the plaintiff's mare was turned out to graze upon the land of the husband of the said *feme plaintiff,* and while grazing on the land above the cut the bank caved in and gave way, throwing the mare upon the track below, and that she received injuries from which she later died, and that the mare was worth the sum of two hundred dollars.

The defendant denied all allegations of negligence, and also denied that the mare was killed by falling down the embankment.

The evidence of the plaintiff tends to prove that the defendant had constructed a line of railway through the lands of D. F. Howard, husband of the plaintiff; that the defendant, in building its railway through these lands, had made a cut about ten or twelve feet deep, and as first constructed, the cut sloped outwards to the top, but dirt had been removed in making a fill so that the top of the cut overhung the roadway underneath about eighteen inches, and the cut was hollowed out underneath the overhanging bank. That on 1 June, 1917, the plaintiff's mare had been turned out to graze upon a portion of the lands of the husband lying between the graveyard and the railway; the mare was in good condition the evening before. The next morning she was found right by the railway track, on the roadbed, underneath the cut. She was

hurt; her hip was broken, and she was in a droopy condition. The mare died the following night, and was worth two hundred dollars. Tracks showed where a horse had come down to the top of the bank above where the mare was found; the top had caved in, and showed the print of two feet of a horse where it was broken through, and there was a place underneath the bank where the dirt on the roadway was packed as if something had fallen on it. The tracks of a horse appeared on the ground above the cut (where the horse was grazing), leading to the cut, the overhanging dirt had caved in, and showed a horse's track where it had fallen in, and the horse was found on the ground underneath this broken place, where a witness, the plaintiff, testified: "I just saw where her feet had cut through the bank that was hanging over, and then we saw her print on the ground where she hit the soft ground." It was also in evidence that railway cuts, as usually constructed, sloped outward from the roadbed.

"Frank Wilhide, a witness for the plaintiff, was tendered but not examined by the plaintiff, and after he was called and sworn, defendant's counsel stated that he wanted to cross-examine him and not use the witness as a witness for the defendant. The court ruled that the witness, after he was tendered, was a witness for the defendant, and to this defendant excepted and declined to examine the witness as a witness for defendant, but insisted that he had the right to cross-examine him."

At the conclusion of the evidence there was a motion for judgment of nonsuit, which was overruled, and defendant excepted.

There was a verdict and judgment in favor of the plaintiff, and the defendant excepted and appealed.

*Witherspoon & Witherspoon for plaintiff.*
*M. W. Bell for defendant.*

ALLEN, J. The right of way of the defendant is not clearly defined, but, whether extending on both sides of the track beyond the sides of the cut or not, the plaintiffs had the right, as owners, to use any part thereof not required or used for railroad purposes (*R. R. v. Bunting,* 168 N. C., 580), and it was not contributory negligence for the plaintiffs to permit their horse to run at large in the pasture through which the defendant's road passed. *Winkler v. R. R.,* 126 N. C., 373.

It was also the duty of the defendant to use all reasonable efforts to protect the property of the plaintiffs, and it is liable in damages for its failure to do so. *Willis v. White,* 150 N. C., 202.

Applying these principles, we are of opinion there was evidence fit to be submitted to the jury, and that the motion for nonsuit was properly overruled.

The evidence tends to prove that the banks of the cut were properly constructed at first, sloping from the bottom out from the track; that, needing soil for a fill, the defendant dug out the sides of the banks without disturbing the top, thus leaving the upper part with slight support; that this was done through the pastures of the plaintiffs, where it might be reasonably anticipated stock would graze and approach the cut, and this is evidence of negligence.

The circumstances also show the mare was injured by falling in the cut, as a result of this negligence.

Tracks of the horse on the top of the bank near where it caved, the top caved, two tracks of a horse where the bank broke through, the soil on the roadbed underneath the bank packed as if something had fallen on it, the mare in good condition the evening before, and found the next morning on the roadbed underneath the cut near where the bank caved with her hip broken, are circumstances which lead to but one conclusion, and this is that the mare, while grazing, approached too near the overhanging bank, fell through, and was injured.

The exception to the refusal to permit the defendant to cross-examine the witness tendered, and treat him as a witness for the plaintiffs, cannot be considered, because neither the purpose of the examination nor the anticipated result is shown, and if a new trial should be ordered on this ground it might then appear that the witness knew nothing that would even remotely affect the controversy.

No error.