(No. 4958. May 10, 1929.)

E. B. COULSEN, Respondent, v. ABERDEEN-SPRING-
FIELD CANAL COMPANY, a Corporation, Appellant.

[277 Pac. 542.]

Maurice M. Myers and W. C. Loofbourrow, for Appellant.

G. F. Hansbrough, for Respondent.

BAKER, District Judge.—The plaintiff seeks to recover the value of a pure-bred bull which died as a result of injuries sustained by him in falling into a waste ditch or spillway controlled by the defendant. Plaintiff alleged the defendant was negligent in failing to control the flow of

water in the ditch so as to prevent the washing away of the land and in failing to fence for the protection of plaintiff's livestock grazing upon his land through which the ditch runs. Upon the first trial a judgment of nonsuit was entered which was reversed on plaintiff's appeal (39 Ida. 320, 227 Pac. 29).

At the second trial application was made by the defendant to amend its answer by denying the absolute ownership in the plaintiff of the land described in his complaint and by alleging that his interest and ownership were subject to the prior right of way of the defendant for its ditch and that the defendant was a Carey Act operating company. Upon the admissions of the plaintiff, several times repeated and appearing in the record at his request, that defendant owned the ditch or spillway and had all the rights of ownership it could, as the owner of an irrigation system, acquire under the laws of the United States, the application to amend was withdrawn. A certified copy of the articles of incorporation of the defendant, showing it to be a Carey Act operating company, was admitted in evidence.

In addition to the facts stated in the opinion on the former appeal, it is established that the construction company built the spillway or waste ditch over the land while it was unappropriated public land of the United States; that the works consisted of a wooden flume from the discharge gate in the lateral to the bottom land below the bench; that at various times the flume had washed out and that much soil had been carried away and a gulch of considerable dimensions had been formed. The last wash occurred in July or August, 1920, and it was into this portion of the gulch the bull fell. The defendant company, between the date of the last erosion and the date of the injury to the bull, had substituted a pipe for the wooden flume but had not filled the gulch or placed guards about it.

After the construction of the ditch the plaintiff succeeded to the ownership and the possession of the land and devoted it to ordinary farming purposes—cultivating it and permitting his livestock to graze upon it when the crops were removed. The farm was fenced and cross-fenced but the

ditch was not guarded or fenced. In November, 1920, the bull, with a considerable number of pure-bred cows, was grazing in the field through which the gulch had been formed. Apparently the bull grazed so near to the gulch that its precipitous banks gave way under his weight. In the fall he sustained injuries from which he later died.

A part of plaintiff's land was too high to be conveniently irrigated. At his request defendant had permitted him to control his own headgates in the lateral and to control the discharge gate at the head of the waste ditch in such manner as to raise the water in the lateral to a sufficient level to enable him to irrigate his high land. In consideration of this concession on the part of defendant, plaintiff agreed to maintain the lateral within his premises and to make such repairs as might be necessary from overflow of the ditch banks from his operations. Necessary repairs were made by him. There was no agreement on his part to repair the waste ditch. At various times plaintiff had complained of shortage of water and had asked that additional water be given to him if possible. Shortly before the last erosion took place one of plaintiff's tenants had asked for additional water and some water not needed by other users was permitted to flow down the lateral. The defendant expected plaintiff to permit any excess water to flow out at the end of the lateral into the spillway. From the time the additional water was delivered to plaintiff's tenant until after the wash, the discharge gate was not changed.

There were verdict and judgment in favor of the plaintiff for the sum of $1,300. Motion for new trial was made and from the order denying such motion the defendant has appealed.

Under the assignments of error, stated in the usual variety of form, appellant takes the following positions: 1. That it was under no duty to fence its right of way or to maintain it in such condition that respondent might safely use the banks for pasturage purposes; 2. That respondent was guilty of contributory negligence precluding recovery in that, (a) the erosion was caused by his permitting extra water furnished to him at his request to be discharged into the

spillway, and (b) he had permitted his livestock to run at large in the vicinity of the ditch.

In support of the first position stated appellant argues that its interest in the land included within·the maximum limits of its right of way is sufficient to give it all the rights of an absolute owner; that it is answerable for the condition of its right of way only when the owner of the fee would be answerable; that it is entitled to the exclusive possession of its entire right of way; that respondent's cattle while grazing within the exterior limits of the right of way were trespassing animals to which appellant owed only the duty of refraining from wantonly or wilfully injuring them. If these positions be tenable, respondent cannot recover (*Strong v. Brown*, 26 Ida. 1, Ann. Cas. 1916E, 482, 140 Pac. 773, 52 L. R. A., N. S., 140; *Gould v. Reed*, 34 Ida. 618, 203 Pac. 284). Respondent, on the other·hand, contends that appellant did not possess the rights of absolute ownership; that it held an easement only and that the rights and liabilities of the parties are to be determined by the law relating to that subject; that he had the right to occupy the land within the limits of the right of way and to graze his cattle thereon; that the Idaho cases cited and relied upon by appellant have no application. Respondent's principal authority is the case of *Big Goose & Beaver D. Co. v. Morrow,* 8 Wyo. 537, 80 Am. St. 955, 59 Pac. 159.

By the provisions of sec. 18 of the act of Congress of March 3, 1891 (26 Stats. at Large, 1101, 8 Fed. Stats. (2d) 803, 43 U. S. C. A., sec. 949), there was granted through the public lands of the United States "the right of way . . . to any canal or ditch company formed for the purpose of irrigation . . . . to the extent of the ground occupied by . . . . the canal and its laterals, and fifty feet on each side of the marginal limits thereof; also the right to take, from the public lands adjacent to the line of the canal or ditch, material, earth and stone necessary for the construction of such canal or ditch." Section 19 of that act provides that the lands over which such right of way passes shall be disposed of subject to such right of way. Section 20 ex-

tends the grant to individuals, to existing canals and provides for forfeitures.

Appellant contends in substance that by this grant it acquired the same rights as railroads acquire under similar grants.

The use to which a right of way is devoted or for which it is created determines the character of title with which the holder is invested The character of the use or the necessity of complete dominion determines the extent to which he is entitled to possession. No greater title or right to possession passes under a general grant than reasonably necessary to enable the grantee to adequately and conveniently make the intended use of his way (19 C. J. 909, 966; 9 R. C. L. 784).

In *Territory of New Mexico v. United States Trust Co.,* 172 U. S. 171, 19 Sup. Ct. 128, 43 L. ed. 407, the court held that the term ''right of way'' may mean merely the right to pass over a tract of land or it may refer to the specific tract itself; that the meaning of the term and the character of the interest granted may depend upon the purposes, the uses and the necessities of such grant, and whether the land itself or the right of passage only is granted depends upon the character of the contemplated use; that if the use is continuous and embraces the entire beneficial occupation and improvement of the property and is of such character as to require for its complete enjoyment more than a mere right of passage, more than an easement will be conveyed and concluded that Congress, by granting to railroads a right of way of a specific, instead of an indefinite, width, not only intended to grant a tangible and corporeal right, namely, the property itself, and not a mere incorporeal right, but also determined that a way of the width granted was reasonably necessary for railroad purposes. The rules thus stated for the determination of the character of title or interest conveyed in grants of ways have been accepted by courts and text-writers (22 R. C. L. 847; 19 C. J. 909). A grant of land to a railroad for right of way purposes is substantially different from any like grant for other purposes. The character of the contemplated use makes it

different. It is intended that the use by a railroad company will be perpetual and continuous. A railroad company performs a public service and is burdened with a public duty. In the performance of that duty it is held to the exercise of the highest degree of care and the complete, convenient and safe use of its right of way requires that its possession be exclusive—a possession not shared with another; that it have complete dominion over its right of way and that it enjoy all those rights which usually attend the fee (22 R. C. L. 861 et seq.; *Territory of New Mexico v. United States Trust Co., supra; Northern Pac. Ry. Co. v. Townsend,* 190 U. S. 267, 23 Sup. Ct. 671, 47 L. ed. 1044; *Western Union Tel. Co. v. Pennsylvania R. R. Co.,* 195 U. S. 540, 1 Ann. Cas. 517, 25 Sup. Ct. 133, 49 L. ed. 312; *Rio Grande Western Ry. Co. v. Stringham,* 239 U. S. 44, 36 Sup. Ct. 5, 60 L. ed. 136; *Oregon Short Line R. R. Co. v. Stalker,* 14 Ida. 362, 94 Pac. 56; *Hurst v. Idaho-Iowa L. & R. Co.,* 34 Ida. 342, 202 Pac. 1068).

The difference between rights of way for railroad purposes and those for other purposes is further illustrated by the remedies available to the holders of the ways in case of interference. Railroads, having the right to the exclusive possession and all the incidents of absolute ownership, may maintain an action at law in ejectment. Such remedy is not available to the holders of other rights of way (note, 47 A. L. R. 552).

Railroad rights of way are distinguished from other ways principally, if not entirely, by the difference in use. There is not the same necessity for exclusive possession of a right of way by canal companies as by railroads. The reasons for according to railroads the right to the exclusive possession are not applicable to canal companies (*Hurst v. Idaho-Iowa L. & R. Co., supra*). The use of right of way for a ditch or canal does not require the exclusive possession of or complete dominion over the entire tract which is subject to the "secondary" as well as the principal easements (*City of Bellevue v. Daly,* 14 Ida. 545, 125 Am. St. 179, 14 Ann. Cas. 1136, 94 Pac. 1036, 15 L. R. A., N. S., 992; *Durfee v. Garvey,* 78 Cal. 546, 21 Pac. 302).

■ If the difference in uses did not exist and if sections 18, 19 and 20 of the act of March 3, 1891, stood alone, there would be but little to distinguish the character of the titles conveyed. Section 21 of the act, however, provides:

"That nothing in this act shall authorize such canal or ditch company to occupy such right of way except for the purposes of said canal or ditch, and then only so far as may be necessary for the construction, maintenance and care of said canal or ditch."

It seems clear that Congress by that section intended to limit a canal company in its appropriation of the public land to an amount reasonably necessary for the construction, the convenient operation and the necessary maintenance and repair of its canal, and did not intend, as in the case of railroads, to determine the amount of land necessary for the use. By that section Congress limited the canal company's right to possession to the reasonable requirements of the use. No greater burden was to be placed upon the servient tenement than reasonably necessary for the exercise of the right. We think it clear that appellant did not have title to the strip of land of 100 feet in width, in addition to the width of its spillway, but had an easement only and that its rights are to be measured and governed by the law relating to that subject. It was expressly held in *Whitmore v. Pleasant Valley Coal Co.*, 27 Utah, 284, 75 Pac. 748, that a canal company acquired but an easement under the act referred to. In *United States v. Big Horn Land & Cattle Co.*, 17 Fed. (2d) 357, it was held that the appropriation of a natural lake for reservoir purposes under the act of 1891 did not confer on the grantee the exclusive fishing privileges or permit him to exclude other persons desiring to fish in the lake. In *Uhrig v. Crane Creek Irr. Dist.*, 44 Ida. 779, 260 Pac. 428, this court referred to the right as an easement.

■■ The grant under which appellant claims was indefinite as to width and location of the canal as well as to the character of the conduit to be constructed. The only limitation was that fixed by sec. 21—that no greater burden be imposed than was necessary. In such case the practical construction placed upon the grant by the parties to it fixes

the limits of the burden imposed. The construction of the ditch by appellant as definitely fixed its location, its width, its course and the character of the means to be employed to convey the waste water from the ditch to the bottom land as if such matters had been specifically fixed by formal contract. The initial use measures appellant's rights under an indefinite grant (*White Bros. & Crum Co. v. Watson,* 64 Wash. 666, 117 Pac. 497, 44 L. R. A., N. S., 254; *Felsenthal v. Warring,* 40 Cal. App. 119, 180 Pac. 67; *Winslow v. City of Vallejo,* 148 Cal. 723, 113 Am. St. 349, 7 Ann. Cas. 851, 84 Pac. 191, 5 L. R. A., N. S., 851; *Kern Island Irrigating Co. v. City of Bakersfield,* 151 Cal. 403, 90 Pac. 1052; *Vestal v. Young,* 147 Cal. 715, 82 Pac. 381; *Patterson v. Chambers Power Co.,* 81 Or. 328, 159 Pac. 568).

By the express provisions of sec. 19 of the act referred to, the land passes from the government burdened with the easement or right of way of the canal company. The company, however, was entitled to no greater right than it could have enjoyed under an express grant by deed of right of way for waste ditch of the size and location and with the precise means of conducting water as that actually constructed. As against respondent, appellant had the right to continue the use of the right of way in the manner and to the extent that these rights were fixed by the original construction. Respondent or his predecessor acquired from the government the entire estate not then appropriated by the right of way and also the right to limit appellant's encroachments to the first use made. His estate was subject to the easement fixed by the act of the appellant or its predecessor in locating and constructing its canal and the implied "secondary easements" and it could not thereafter be subjected to a greater burden (*White Bros. & Crum Co. v. Watson, supra; Felsenthal v. Warring, supra; Hurst v. Idaho-Iowa L. & R. Co., supra; Vestal v. Young, supra; Oliver v. Agasse,* 132 Cal. 297, 64 Pac. 401).

While appellant had the right to exercise the "secondary easements" which accompanied the right it held, substantial alterations or changes in the manner of the use could not be made, and any increase in the burden imposed upon re-

spondent's land amounted to a trespass (*Settlers' Irr. Dist. v. A. R. Cruzen Inv. Co.*, 43 Ida. 736, 254 Pac. 1052; 9 R. C. L. 796; 19 C. J. 982; 9 Cal. Jur. 952; *Allen v. San Jose L. & W. Co.*, 92 Cal. 138, 28 Pac. 215, 15 L. R. A. 93; *Joseph v. Ager*, 108 Cal. 517, 41 Pac. 422; *North Fork Water Co. v. Edwards*, 121 Cal. 662, 54 Pac. 69).

 The waste ditch as originally constructed was not dangerous to livestock grazing in its vicinity. At any rate, the injury did not result from the use of the right of way under the original construction but from a condition which resulted from the collapse of the original control works. Appellant was under the duty of maintaining its waste ditch in substantially its original condition. Its obligation to impose upon the servient estate no unnecessary burden and to prevent no use of the property not inconsistent with its right to maintain the ditch bound it to take such measures as might be necessary to make its right of way no more burdensome than it was originally. The duty of maintaining the easement or right of way was upon appellant and not upon respondent (*City of Bellevue v. Daly, supra; Durfee v. Garvey, supra; Linton v. Miller & Lux*, 83 Cal. App. 481, 257 Pac. 105). The failure of appellant to repair or guard amounts to actionable negligence (9 R. C. L. 796; 2 Tiffany on Real Property, 1350; *Big Goose & Beaver Co. v. Morrow, supra*). This court in *Settlers' Irr. Dist. v. A. R. Cruzen Inv. Co., supra*, held that the owner of the dominant tenement was answerable for such damages as might be sustained by the owner of the servient tenement resulting from the failure of the former to properly maintain the works connected with the easement, and in *Stuart v. Noble Ditch Co.*, 9 Ida. 765, 76 Pac. 255, and *Burt v. Farmers' Co-op Irr. Co.*, 30 Ida. 752, 168 Pac. 1078, held that a canal company was liable for damages resulting from its negligent operation of its ditch or canal.

Respondent had the right to make every reasonable use of his property over which the spillway had been constructed. He had the right to cultivate his land and to graze his cattle thereon. The only limitation on this right was that no use could be made by him that would interfere with the appellant

in the operation, maintenance or repair of its waste ditch. Of any use consistent with its right appellant could not complain (*City of Bellevue v. Daly, supra;* 9 R. C. L. 784, 797; 19 C. J. 977; 9 Cal. Jur. 953; *Patterson v. Chambers Power Co., supra; Collins v. Alabama Power Co.,* 214 Ala. 643, 46 A. L. R. 1459, 108 So. 868; *Durfee v. Garvey, supra; Harmony Ditch Co. v. Sweeney,* 31 Wyo. 1, 222 Pac. 577; *Kentucky & W. V. Power Co. v. Elkhorn City Land Co.,* 212 Ky. 624, 279 S. W. 1082). It is not necessary that the right of the owner of the servient tenement to occupy and use his land be expressly reserved to him; it is reserved unless expressly conveyed (9 R. C. L. 797; 19 C. J. 978; *Rolens v. City of Hutchinson,* 83 Kan. 618, 112 Pac. 129).

It follows that the bull owned by respondent was not a trespassing animal but was rightfully grazing on the right of way and that the rules announced by this court in *Strong v. Brown, supra,* and *Gould v. Reed, supra,* have no application. The condition of the waste ditch was not due to its reasonable use by appellant for the purposes contemplated but was due to an unauthorized burden imposed upon respondent's land, and the failure of appellant to restore the land to its former condition or to protect respondent in the ordinary use of his property in a manner not inconsistent with the right originally acquired constituted actionable negligence. The appellant is liable only because it was negligent. Nothing contained in the opinion justifies the conclusion that a canal company is liable for injuries resulting from the ordinary use of a canal or a use reasonably within the terms of the original grant, or that such company must fence its right of way or otherwise protect persons or property from the hazards naturally connected with that use.

We think the evidence is insufficient to justify us in saying that the last wash occurred through the negligence of the respondent in caring for the water delivered to him. There was no agreement in any manner relating to the spillway. There was no covenant on respondent's part to make repairs to the spillway or to keep it in repair. There was no evidence that respondent did not in all respects

handle all water delivered to him for use on his own premises in the usual or ordinary manner or that the company would have done differently. The waste ditch was constructed for the purpose of carrying surplus water to the bottom land and the company expected respondent to make that use of it. There was no evidence that the wash occurred through the delivery to respondent's farm of any unusual amount of water or that, except for the agreement relied upon, the additional water permitted to flow down the lateral at about the time of the wash would not have been permitted to escape through the waste ditch. Neither the additional water delivered to respondent's farm nor the violation of any agreement testified to is shown to have been the proximate cause of the wash. If the testimony of some witnesses to the effect that their understanding of the agreement was that respondent was to take care of and to be responsible for the water delivered at his fence line is to be regarded as proof of an agreement on his part to operate all works below his fence, its value is considerably weakened by the fact that the appellant continued to make repairs to the waste ditch works without a charge that such work should have been done by respondent. There was a denial by respondent of any agreement for the operation of the spillway or of responsibility for its maintenance or repair. The question was therefore properly submitted to the jury.

Appellant insists that since respondent had actual knowledge of the existence of the gulch and had as much information as appellant of the danger it presented to livestock grazing in the vicinity, he should have anticipated the very occurrence that actually happened. Appellant seeks to invoke the rule that every person must do all those things to protect himself and his property from the consequences of the negligence of others that a reasonably careful and prudent person would do under the same circumstances. It asserts that this rule requires that respondent should have foreseen that his livestock would fall in the ditch and that by permitting his cattle to graze in the vicinity of the unguarded ditch, he has so contributed to the injury as to preclude recovery. Appellant does not deny respondent's

right to the pasture or its value; it does not inform us how he was to realize that value or what he should have done and gives us no rule by which its own liability is to be measured. We do not know whether respondent should have incurred the expense and labor necessary to fill the gulch or to place a barrier in that vicinity and sued to recover the cost, or whether he should have herded his cattle away from the danger and occasionally instituted his actions to recover the value of such services, or whether he should have kept his livestock entirely out of the field and sued to recover the annual value of the pasture. No authority is cited in support of the rule that one may negligently create and leave upon his neighbor's land a condition dangerous to the ordinary use of such land and then successfully defend an action to recover damages which have followed such use by saying that since the neighbor had knowledge of the condition, he should have anticipated all injuries that might result and should have protected his property by refraining from making an ordinary and what, under all other conditions, would be a proper use of his land.

To constitute contributory negligence there must be a breach of the duty imposed by law upon persons to protect themselves from injury from the negligent act of another and that such breach must concur with the negligence of the other in producing the injury complained of (45 C. J. 942, 943). Applied to this case, to sustain the defense of contributory negligence, respondent must have, under the circumstances, owed to the appellant the duty of refraining from making a lawful use of his land, and there must be such a direct connection between his breach of that duty and the resulting injury as to make the former a contributing or a proximate cause of the latter.

The rule is that so long as the danger is not so obvious as to make it "morally certain" that injury will follow the ordinary use of land, the owner has the right to make any use of it he desires to make and no accusation of contributory negligence can be directed against him. The only limitation on his right is that he must not so use his own land as to wrongfully injure his neighbor (*North Bend*

*Lumber Co. v. Seattle*, 116 Wash. 500, 19 A. L. R. 415 (and note on page 423), 199 Pac. 988). The rule is stated in 45 C. J., at page 945, in these words:

"While it has been held that one who fails to take precautions which he might have taken to protect his property from injury resulting from the negligence of another, the danger from which he is fully aware, is guilty of contributory negligence, it is generally held that the rule which requires one to exercise ordinary care to protect himself from the results of the negligence of others is subject to the exception that, as a person is entitled to use his own premises for any lawful purpose, his failure to protect them from the negligence of another will not be contributory negligence."

It has many times been contended by persons who had, on land in their possession, constructed works which interfered with the natural flow of water in natural watercourses, that it was contributory negligence for a land owner to plant his land to crops when he had knowledge of the character of the interference. Such position has, with rare, if any, exceptions been rejected. There must be more than a possibility or a probability of injury (note, 19 A. L. R. 423).

The same principle has been applied in many cases brought against railroad companies which have failed to fence their rights of way as required by statute. The knowledge on the part of the adjacent land owner that the company has failed to erect or maintain the fence does not require him to forego the ordinary use of his property, and he is not guilty of contributory negligence preventing recovery if he turns his livestock into an adjoining field (33 Cyc. 366; 11 R. C. L. 905).

In *Howard v. Andrews Mfg. Co.*, 179 N. C. 118, 101 S. E. 491, it was held not to be contributory negligence for a land owner to turn his horse out to graze in a field through which a railroad cut had been so negligently changed as to leave overhanging unprotected banks which gave way under the weight of the horse.

In the note in 43 L. R. A., N. S., at page 460, several cases are cited in support of the rule that a farmer, having

knowledge that a railroad right of way fence has not been constructed or is defective and that livestock might enter upon his premises, is not guilty of contributory negligence in planting his land to crops.

We are of the opinion that there is not that direct connection between the act of the respondent in turning his bull out to graze in the pasture and its injury as to make his act a proximate or contributing cause of the injury. The connection is too remote. The negligence of the appellant was the immediate, the direct and proximate cause of the injury. It is, of course, true that if the bull had been kept in a barn or in a distant field he would have escaped injury. It is likewise true that if appellant had maintained its spillway in the manner in which it was originally constructed, or had not permitted the land to wash, or had guarded the gulch, the injury would not have occurred. If the actions of a plaintiff were to be measured by such a rule it is difficult to see how any action sounding in tort could be maintained.

The order appealed from is affirmed, with costs.

Givens, T. Bailey Lee, Wm. E. Lee, and Varian, JJ., concur.