**YELLOWSTONE PIPE LINE COM-PANY, a corporation, Appellant,**

v.

**Anthony KUCZYNSKI, Appellee.**

**No. 16435.**

United States Court of Appeals Ninth Circuit.

Oct. 11, 1960.

416

J. L. McClellan, Jr., Ponca City, Okl.,
James T. Knudson, Boise, Idaho, for appellant.

R. N. Elder, Thomas A. Mitchell, Coeur
d'Alene, Idaho, for appellee.

Before HAMLEY, JERTBERG and
KOELSCH, Circuit Judges.

KOELSCH, Circuit Judge.

Plaintiff's suit was to recover damages for injury to community property alleged to have been caused by the defendant's negligent failure to repair the bed and protect the banks of a stream which defendant had altered and cut in order to construct a pipeline. $8,000.00 was sought as general and special damages for injuries to plaintiff's land and improvements, plus $500.00 for loss of his personal property.[1]

The cause was tried to the court sitting without a jury. At the conclusion of plaintiff's case the defendant made a motion to dismiss on the ground that no negligence was shown; ruling was reserved; a second such motion was made based upon two releases executed by plaintiff. Both motions were denied and the court made findings and entered judgment in favor of plaintiff in the sum of $3,172.00.[2]

1. As already noted the property involved in this action belongs to both plaintiff and his wife as community property; we refer throughout this opinion to plaintiff alone as its owner simply for convenience.

2. Plaintiff claimed damages as follows:
   a. For loss of domestic trout, $500.00,
   b. For causing erosion of portion of southern part of tract, $1,000.00,
   c. For destruction of bridge, $3,000.00,
   d. For injury to road, $500.00,

Defendant has appealed.

Jurisdiction of the court below was based upon diversity of citizenship under 28 U.S.C.A. § 1332, and of this court is conferred by 28 U.S.C.A. §§ 1291 and 1294.

Plaintiff's land is situated in the mountains of northern Idaho and lies to the south of and adjoining other lands belonging to one William Jackson. A stream known as Wolf Lodge Creek meanders through both tracts in a channel which, following the natural slope of the ground, extends to the east for some distance along the northern boundary of Jackson's property, then, changing direction, continues to the south into the southerly part of plaintiff's land when it again turns and stretches on to the southwest. A bridge belonging to plaintiff crossed the creek in the southern portion of plaintiff's land and afforded access to his house from a public road. To the north of the house was an artificial pond constructed by plaintiff and devoted to the rearing of trout.

The parties had entered into a "Right of Way" agreement in the fall of 1953 by which defendant was granted an easement through plaintiff's land for an underground pipeline. The agreement recited a cash consideration paid to plaintiff and also provided that the defendant would " * * * pay any damages which may arise to crops, buildings, drain, tile, fences and timber by reason of grantee's operations."

The next year the line was constructed; the route followed intersected Wolf Lodge Creek at two points, first on Jackson's land and again immediately to the east of the bridge on plaintiff's land. In the performance of this work defendant first cleared the ground of all vegetation and obstructions, and excavated a trench; sections of pipe were then assembled and welded together, after which the line was laid in place and the trench was filled with the same earth that had been previously removed. This procedure was also followed in laying the pipe through the creek, except that there it was necessary to first cut the banks on each side and then dig the trench to a depth of about 48 inches below the channel. Defendant's chief inspector, who described that particular part of the work, stated that the soil at the two crossings was "rather gravelly and the banks would only stand at about a forty-five degree angle, so in order to have a ditch wide enough I imagine it was eight foot wide at the top when we were in the process of laying it."

In 1956, during the annual spring runoff, loose gravel in the channel collected at the abutments of the bridge; this dammed the stream and caused water to rise and flow over the south bank of the creek and to wash out plaintiff's southerly approach to the bridge over his land in that area. Plaintiff thereupon made demand upon defendant for damages; negotiations were entered into, resulting in an agreement by the terms of which defendant paid plaintiff the sum of $562.-50 and performed some work on and around the bridge.[3] To evidence the settlement, plaintiff executed two documents, one dated July 6, 1956 and the other August 1, 1956; both are entitled "Receipt-Release."

In May 1957 plaintiff's land was again flooded when the banks of Wolf Lodge Creek washed out. These washes occurred at both places where defendant had made its excavation and crossed the creek with the pipeline. Water from the

---

e. For loss to access to house, $3,000.-00.

He was awarded damages in the full sum sought for item a; $500.00 for item b; $2,172.00 for items c and d; finding the evidence insufficient, the court allowed nothing for item e.

3. The soil and rocks from the excavation were piled alongside the entire length of the trench through plaintiff's land; when the pipe was covered some rocks were left on top of the ground; plaintiff contended that defendant should have removed these rocks and in addition to his demand for flood damage he also included a claim for defendant's failure to clear these rocks from the right of way.

breach in the bank on the Jackson property flowed into and filled plaintiff's fish pond causing the retaining dam to burst and allowing some 500 trout ranging in size from 12 to 14 inches in length to escape; water from the other break in the bank carried away plaintiff's bridge and covered the meadow along the creek with gravel and debris. Plaintiff's demand for damages was refused and the instant suit followed.

■ None of the items for which plaintiff is claiming compensation is among those for which defendant agreed, as part of the consideration for the right of way agreement, " * * * to pay any damages which may arise by reason of grantee's operations." As defendant correctly points out, plaintiff's action, as in Shell Pipe Line Corp. v. Coston, Tex.Civ. App.1931, 35 S.W.2d 1056, sounds in tort rather than contract, and the burden was upon plaintiff to establish that the defendant was negligent in constructing its pipeline. But defendant argues that the record fails to reveal any question of fact as to such negligence and also that the two releases signed by plaintiff constitute a final settlement of the very claim he is now asserting.

This appeal therefore presents two issues:

(1) Was defendant negligent? If so,

(2) Was plaintiff estopped from commencing and prosecuting an action against the defendant to recover on this claim? [4]

The critical findings of the District Court are as follows:

"V. In the construction of said pipeline defendant altered and changed the channel of Wolf Lodge Creek and destroyed the natural creek bed and banks in two places: one place was immediately north of the north boundary of plaintiff's land and the other was in the place heretofore mentioned where the

stream changes its direction to a southwesterly course. Defendant failed to either restore the banks or protect the damaged and changed area thereof with material which would prevent these damaged areas from washing out when the annual runoff of melting snow caused high water.

"VI. During the months of April and May, 1957, at the time of high water, washouts occurred at the places where the defendant had constructed its pipeline. These washouts were caused by the weakened condition of the banks where defendant had destroyed their natural condition * * *.

"VII. That the various receipts and releases for damages caused prior to the 1957 flood do not constitute a release by plaintiff to defendant for damages occurring after the year 1956.

"VIII. That the failure of defendant to rip-rap or otherwise protect the damaged banks constitutes a negligent omission on the part of defendant."

■ Under Idaho law, negligence is generally a question of fact:

"It has been well said by one court (in Pittsburgh, Ft. W. & C. R. Co. v. Callaghan, 157 Ill. 406, 41 N.E. 909) that: 'Where the evidence on material facts is conflicting, or where on undisputed facts fair-minded men of ordinary intelligence may differ as to the inferences to be drawn, or where on even a conceded state of facts a different conclusion would reasonably be reached by different minds, in all such cases negligence is a question of fact.' "

Fleenor v. Oregon Short Line R. Co., 1909, 16 Idaho 781, 803, 102 P. 897, 904. See also, Benson v. Brady, 1953, 73 Idaho 553, 255 P.2d 710. Under any of the

---

4. In considering both questions, Idaho law governs. Traglio v. Harris, 9 Cir., 1939, 104 F.2d 439, 127 A.L.R. 803; Preece v. Baur, D.C.Idaho 1956, 143 F.Supp. 804;

Little Rock Packing Co. v. Mass. Bonding and Ins. Co., 8 Cir., 1959, 262 F. 2d 327.

circumstances referred to in the above quotation, this court may not upset a finding of negligence unless "clearly erroneous." United States v. Fotopulos, 9 Cir., 1950, 180 F.2d 631; Beck v. United States, 9 Cir., 1955, 221 F.2d 566. Only where the facts are undisputed and but one conclusion may be reasonably drawn from them does negligence become a question of law. Bell v. Carlson, 1954, 75 Idaho 193, 270 P.2d 420; Stowers v. Union Pac. R. Co., 1951, 72 Idaho 87, 237 P.2d 1041.

Plaintiff concedes that the easement across his property entitled the defendant to cut the banks of Wolf Lodge Creek and excavate the trench, and that the consideration he received for that right of way included compensation for such damages to his land as would necessarily result from the construction of the pipeline with ordinary care; and defendant readily acknowledges that after the laying of the pipe was completed it owed a duty to plaintiff to restore and maintain the banks of the creek where it had cut them during the construction.[5]

The arrangement under which defendant constructed its pipeline through the Jackson property does not appear; but regardless of the relationship or agreement existing between defendant and Jackson, or the nature of defendant's interest in that land, the ownership of the line likewise imposed upon it the duty to take reasonable precautions to prevent others in the path of danger from suffering injury because of the escape of waters resulting from cutting the banks or disturbing the channel of the stream. Christensen v. Omaha Ice & Cold Storage Co., 1912, 92 Neb. 245, 138 N.W. 141, 41 L.R.A.,N.S., 1221; see also, Sund v. Keating, 1953, 43 Wash.2d 36, 259 P.2d 1113.

On this record we believe plaintiff made out a prima facie case of negligence. The evidence clearly shows that the banks of Wolf Lodge Creek in their natural state were heavily overgrown with willows and elder trees, and were blanketed with wild grass which formed a covering of thick sod. In the spring the creek had often been filled to overflowing, but although some water escaped from the stream, the banks had not given way and no appreciable injury to plaintiff's land had resulted. The evidence likewise reveals that in the process of constructing its pipeline defendant stripped all this cover from the ground and destroyed it so that when the banks were rebuilt they were completely barren of any plant life. The evidence was conflicting, however, regarding the type and composition of the soil at the places where the pipeline intersected the stream: some testimony was to the effect that the soil consisted of silt and small gravel, and that the new banks were soft; other testimony tended to show that the soil was "quite rocky" and that the banks were not loose.

But considering all the evidence it is abundantly clear that the natural condition of the banks of the creek was materially changed by the construction of the line. Admittedly the same soil, whatever its composition, was replaced in the cuts; yet it is common knowledge that soil is less compact and less cohesive after it has been excavated than before it was disturbed. In addition, the rebuilt banks were devoid of any vegetation and lacked the protective presence of growing roots and sod that previously had served to strengthen and protect them. In brief, there is evidence that defendant weakened the banks of

5.  Defendant cites Lone Star Gas Co. v. Hutton, Tex.Com.App., 1933, 58 S.W.2d 19; Griffeth v. Utah Power & Light Co., 9 Cir., 1955, 226 F.2d 661; and Pridgen v. Shell Pipe Line Corp., Tex.Civ.App. 1955, 279 S.W.2d 111, among others; decisions of the Idaho Supreme Court uniformly follow the same principle; see City of Bellevue v. Daly, 1908, 14 Idaho 545, 94 P. 1036, 15 L.R.A.,N.S., 992; Coulsen v. Aberdeen-Springfield Canal Co., 1929, 47 Idaho 619, 277 P. 542; City of Payette v. Jacobsen, 1937, 57 Idaho 524, 66 P.2d 1013; Settlers Irrigation Dist. v. A. R. Cruzen Investment Co., 1927, 43 Idaho 736, 254 P. 1052.

the creek by failing to restore them to their former condition or to otherwise strengthen them, thus rendering them more vulnerable to washing and less able to contain the spring freshets.[6]

■ On these facts it was doubtful whether defendant by simply "backfilling" and returning the soil to its former location discharged the duty required of it by law. See Shell Pipe Line Corp. v. Freeman, 1936, 178 Okl. 361, 62 P.2d 1177. The district court did not err in denying defendant's motions to dismiss, and the finding of actionable negligence, being supported by substantial evidence, is not clearly erroneous.

■ Nor do the releases, singly or in combination, serve to preclude plaintiff from prosecuting this action.[7] It is defendant's position that plaintiff's "entire cause of action is based on negligence of the * * * pipeline company in its original construction * * *" and that the releases by their very provisions explicitly compromise and settle in full all claims resulting from that operation. We are inclined to agree with defendant in its assertion that the intention of the parties and the scope of the settlement is readily apparent from the releases. In that event the inquiry need go no further than the four corners of the instruments

themselves. Tapper v. Idaho Irrigation Co., 1922, 36 Idaho 78, 210 P. 591.

■ By the release of July 6th plaintiff acknowledged receipt of $562.50, as follows:

"* * * in full settlement of all damages incurred during construction claimed by the undersigned arising out of or caused by the laying, maintaining and/or operating a 10-inch product pipe line in the place and manner in which laid and operated over and through my lands * * * to this date. Payment in full for all damages incurred during construction in lieu of picking up rocks and replacing top soil along the right-of-way. This release is for construction damages only and the grantor [plaintiff] does not release grantee from liability incurred from washouts or other courses occurring subsequent to completion of construction of said line, or for future damages which may occur."

The release of August 1st, although omitting the recital of the receipt of a monetary consideration, likewise states that it is given in full settlement "* * * * of all damages claimed by the undersigned arising or caused by the laying, maintaining and/or operating a * * *

---

6. In its brief defendant vigorously contends that the "uncontradicted" testimony of Malder, O'Kelly and Haskill, three of its witnesses, established the fact that the methods employed at the two creek crossings were those customarily followed by pipeline companies and pipeline contractors in the area. On this premise it insists that the court should have found against the plaintiff as a matter of law.

However, the general rule is that "[w]hat usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not." Texas & Pac. Ry. Co. v. Behymer, 1903, 189 U.S. 468, 470, 23 S.Ct. 622, 623, 47 L.Ed. 905; see also, The T. J. Hooper, 2 Cir., 1932, 60 F.2d 737; Prosser, Handbook of the Law of Torts (2nd ed. 1955), Sec. 32, p. 135. Moreover, there was evidence submitted that rendered it considerably

doubtful whether any particular practice of crossing creeks in this locality was customarily followed by others in the same business; this evidence was in substance that a different pipeline company had also laid its line through plaintiff's land and crossed Wolf Lodge Creek not far from defendant's crossing, but that in rebuilding the creek banks, the latter company had fortified the restored banks by placing on them a number of sand bags filled with cement.

7. We note that defendant states in his brief that the right of way agreement standing alone and also in conjunction with the two releases serves to estop plaintiff from asserting his claim. However, none of the provisions in the agreement relates to the relinquishment or waiver of any claim based upon negligent exercise of a right granted incident by the agreement.

pipeline through my lands * * * to this date."

These terms are clear and unambiguous. By virtue of them plaintiff released and relinquished all claims "to this date." This language alone is fatal to defendant's contention, for it specifically limits the operation of both releases to pre-existing claims. And this restricted scope of the releases is emphasized by repetition; although the verbiage in each differs, its import is the same. Thus in the earlier release an additional sentence states that "[t]his release is for construction damages only and the grantor does not release grantee from liability incurred from washouts or other causes, occurring subsequent to completion of construction of said line, or for future damages which may occur." Likewise an additional clause in the later instrument contains the declaration that certain "work has been completed in a satisfactory manner which is full settlement of all damages to date as a result of the spring floods of 1956." [8]

Defendant does, however, raise one further question based upon the second release. Part of the work which the plaintiff therein acknowledges the defendant had performed "in a satisfactory manner" consisted of the straightening and widening "of the creek channel to its former width and position." Defendant argues that "[t]he failure to do these things is exactly what appellee now claims was negligence on the part of the appellant pipeline company."

■ This statement of the defendant is only partially correct. Plaintiff charged defendant with negligence not only in respect to the manner it had changed and failed to repair the creek bed or channel, but additionally and separately with failing to properly protect the banks of the creek after their restoration. The bed or channel and the banks

are each separate and constituent parts of a stream:

"The bed of a river is a definite and commonly a permanent channel and consists of the soil which is permanently submerged by the water. The banks of the stream are the elevations of land which confine the waters to their natural channel when they rise to the highest point at which they are still confined to a definite course and channel. The channel is the passageway between the banks through which the water of the stream flows."

II Farnham, Water and Water Rights, Sec. 417 p. 1462, (1904); Morton v. Oregon Short Line Ry. Co., 1906, 48 Or. 444, 87 P. 151, 1046, 7 L.R.A.,N.S., 344; Maricopa County Municipal Water Conservation Dist. No. 1 v. Southwest Cotton Co., 1931, 39 Ariz. 65; 4 P.2d 369. The findings of fact and conclusions of law reveal that the able trial judge was fully aware of this distinction and that the judgment was predicated solely upon plaintiff's failure to properly repair the banks. This was correct; nowhere in the release did the parties indicate an intention to contract with reference to the banks of the stream and defendant's duty with reference thereto.

■ However, even if the fact be conceded that the parties when using the word "channel" in the release meant and were referring to the banks as well as the bed of the stream, nevertheless the judgment must still stand. The most that the release itself would then state regarding the nature and quality of the work that had been performed is that the creek banks (and channel) have been satisfactorily straightened and widened to their former width and position. Nowhere is there any declaration, express or implied, by the plaintiff that he is now satisfied with the condition of those

---

**8.** The particular work is stated thus:

1. Raise bridge across creek so that the creek will flow freely under it; this was done rather than clear the creek bed of loose gravel.

2. Reconstruct road approaches to raised bridge.

3. Fill dam and raise road at overflow point.

4. Straighten and widen creek channel to former width and position.

banks or that he has released or will release the defendant from the continuing duty to restore them, which was created and imposed upon defendant because of the installation and ownership of this pipeline. A thorough study of the entire record discloses substantial evidence that militates against such a construction.[9]

The judgment is affirmed.

9. Plaintiff testified that he wanted defendant to strengthen the bank by rip-rapping and so informed defendant's superintendent Sparkman, but that Sparkman, over plaintiff's objections, refused to authorize such work because of the expense involved.