# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 35469

NORTHWEST PIPELINE CORPORATION, )
a Delaware corporation, )
)
    Plaintiff-Respondent, )     Wallace, April 2010 Term
)
v. )     2010 Opinion No. 98
)
JOSE LUNA and ROSANNA LUNA, and )     Filed: September 7, 2010
their marital community and STEVEN )
CHURCH and ELIZABETH CHURCH, and )     Stephen W. Kenyon, Clerk
their marital community, )
)
    Defendants-Appellants. )

---

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Lansing L. Haynes, District Judge.

The judgment of the district court is vacated and the case is remanded.

James, Vernon & Weeks, Coeur d'Alene, for appellants. Susan P. Weeks argued.

K & L Gates LLP, Coeur d'Alene, for respondent. Brooke C. Kuhl argued.

---

J. JONES, Justice

Northwest Pipeline Corporation (Northwest) holds an easement across the properties of Jose and Rosanna Luna, and Steven and Elizabeth Church (collectively, Appellants). The grant of easement was indefinite as to width. Northwest filed suit to obtain a determination of the width of its easement, to quiet its title to the defined easement, to obtain removal from the right-of-way of any encroachments of Appellants, and to recover damages for such encroachments. Appellants answered, denying that they had interfered with Northwest's easement rights and seeking a ruling that, if they had encroached, their encroachments had extinguished or partially extinguished the easement. Following a court trial on the issues, the district court determined that Northwest held a valid twenty foot easement across Appellants' respective properties, and that Appellants had improperly encroached upon such right-of-way. The Appellants timely appealed

1

to this Court. We vacate the Judgment and remand for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellants are the owners of real property located in a subdivision platted as Kellogg's Fourth Addition, Post Falls, Kootenai County, Idaho. The properties owned by both the Lunas and the Churches were previously owned by Harold and Mabel Hodges. In 1956, the Hodges granted Pacific Northwest Pipeline Corporation (Northwest's predecessor-in-interest) the "right to select the route for and construct, maintain, inspect, operate, protect, repair, replace, alter or remove a pipeline or pipelines for the transportation of oil, gas, or the products thereof," together with "the right of ingress and egress to and from said line or lines." The Grantors retained the right to use and enjoy the property, but agreed "not to build, create or construct or permit to be built, created or constructed any obstruction, building, engineering works, or other structures over or that would interfere with said pipeline or lines or Grantee's rights hereunder." However, the language of the grant does not set the width of the easement.

The Lunas own Lot 4 of Kellogg's Fourth Addition, which is bordered by Kellogg Avenue on the eastern side. The Churches own Lot 10 of Kellogg's Fourth Addition, which is bordered by Kellogg Avenue on the western side. The easement at issue runs along the northern border of both properties.

Elizabeth (Snyder) Church purchased the property, now shared with her husband, in 1995. At the time of the purchase, two blue spruce trees existed on the Churches' property, which now stand twenty feet tall, with trunks approximately five feet from the pipeline. Northwest did not demand removal of the trees until June 2005. A chain link fence that runs almost directly over the pipeline was also in place. In 1999, the Churches constructed a detached metal shop in the back yard that is approximately fourteen feet and six inches from the pipeline. Northwest almost immediately contested the construction. In March 2006, the Churches constructed a lean-to attached to the shop. The support posts for the lean-to are set in concrete and stand approximately four feet from the pipeline. The southernmost edge of the lean-to roof is approximately fourteen and one-half feet from the pipeline and the northernmost edge of the roof is approximately four feet from the pipeline. Northwest objected to the construction by letter dated March 7, 2006.

2

The Lunas purchased their property in January 2005. A chain link fence that runs almost directly over the pipeline was in place at the time of their purchase. The northern wall of the Lunas' house is thirteen and one-half feet from the pipeline. In 2005, the Lunas built a detached garage with support posts set in concrete. The northern wall of the garage is approximately six and one-half feet from the pipeline. The roof overhang of the garage is approximately four feet and eight inches from the pipeline.

A high pressure natural gas pipeline was installed by Northwest's predecessor-in-interest in 1957. Northwest came into existence in 1974, acquiring the property interests of Pacific Northwest Pipeline Corporation at that time. Northwest is an interstate natural gas company, and is thus regulated by the Federal Energy Regulatory Commission (FERC) and by the United States Department of Transportation's Pipeline and Hazardous Materials Safety Administration (Department of Transportation). Northwest has internal operating policies and procedures implemented in accordance with the Department of Transportation's Code of Federal Regulations (49 CFR Parts 190.1-199). In 2002, the Pipeline Safety Improvement Act was enacted, which, among other things, requires pipeline companies to implement a Pipeline Integrity Management Program. According to Tom Grant, a Northwest District Manager, this program means increased inspections, including the use of in-line inspections.

Northwest filed its Complaint for Declaratory Judgment, Ejectment, and Quiet Title on April 24, 2006. Appellants contested Northwest's claim regarding the easement width and, in addition, asserted that the easement was partially or wholly extinguished by virtue of the placement of the encroachments. A court trial on all issues was conducted before the court, on August 20-23, 2007, and September 10-12, 2007. In its findings of fact and conclusion of law entered on November 23, 2007, the court quieted title in Northwest to a twenty-foot-wide easement over and across the northern boundaries of Appellants' properties, ruled that various trees and improvements encroached upon Northwest's easement, and made provision for the removal or amelioration of such encroachments. The court denied Appellants' claims that the encroachments had the affect of partially or wholly extinguishing the easement. Appellants moved for reconsideration, which was declined by the court. The court entered its final judgment on May 16, 2008, from which Appellants timely appealed.

## II. ANALYSIS

### A. Standard of Review

"A trial court's findings of fact will not be set aside on appeal unless they are clearly erroneous." *Farr West Inv. v. Topaz Mktg. L.P.*, 148 Idaho 272, 275, 220 P.3d 1091, 1094 (2009). This Court will not substitute its view of the facts for that of the trial court when deciding whether findings of fact are clearly erroneous. *Id*. Instead, it is the province of the trial court to weigh conflicting evidence and to judge the credibility of witnesses. *Argosy Trust v. Wininger*, 141 Idaho 570, 572, 114 P.3d 128, 130 (2005). Therefore, on appeal this Court will examine the record to see if challenged findings of fact are supported by substantial and competent evidence. *Id*. "Evidence is regarded as substantial if a reasonable trier of fact would accept it and rely upon it in determining whether a disputed point of fact has been proven." *Id*.

### B. The district court erred in determining the easement to be twenty feet in width.

The Appellants raise a number of issues on appeal but most of them are related to the district court's determination that the easement encumbers the northern twenty feet of the Appellants' respective properties. That is, the Appellants claim that their various encroachments either do not impinge upon the easement or are compatible uses that do not interfere with Northwest's easement rights. Further, Appellants contend that because of the placement of the encroachments and the passage of time, the easement has either been extinguished, in whole or in part, or that Northwest is precluded from asserting any rights under the grant of easement by virtue of the applicable statute of limitations. Because we find that the district court erred in establishing the easement width at twenty feet and because the court's determination of the other issues is dependent at least to some degree on such easement width, we need only address the issue of the easement's width. Based upon our holding that substantial and competent evidence does not support the district court's determination of this issue, we vacate the judgment and remand the case for further proceedings consistent with this opinion.

"An easement is the right to use the land of another for a specific purpose that is not inconsistent with the general use of the property by the owner." *Akers v. D.L. White Constr., Inc.*, 142 Idaho 293, 300, 127 P.3d 196, 203 (2005). "An instrument granting an easement is to be construed in connection with the intention of the parties and circumstances in existence at the time the easement was given and carried out." *Argosy Trust*, 141 Idaho at 572, 114 P.3d at 130.

4

When the grant contained in a deed is ambiguous, the deed should be construed against the drafter. *C & G, Inc. v. Rule*, 135 Idaho 763, 766, 25 P.3d 76, 79 (2001).

A "grant indefinite as to width and location must impose no greater burden than is necessary." *Argosy Trust,* 141 Idaho at 572, 114 P.3d at 130 (internal quotations omitted) (quoting *Conley v. Whittlesey*, 133 Idaho 265, 270, 985 P.2d 1127, 1132 (1999)). In *Coulsen v. Aberdeen-Springfield Canal Co.*, this Court discussed indefinite grants in greater detail:

> The use to which a right of way is devoted, or for which it is created, determines the character of title with which the holder is invested. The character of the use or the necessity of complete dominion determines the extent to which he is entitled to possession. No greater title or right to possession passes under a general grant than reasonably necessary to enable the grantee to *adequately and conveniently* make the intended use of his way.

47 Idaho 619, 626, 277 P. 542, 544 (1929) (emphasis added). In addition:

> A general grant of an easement is not restricted to the use reasonably required at the time of the grant. The use may be enlarged so long as the enlargement in use is reasonable and necessary, is consistent with the normal development of the land, and is not unduly burdensome to the servient estate.

*Argosy Trust,* 141 Idaho at 573, 114 P.3d at 131. "There is a difference, however, between the enlargement in the use permitted by the owner of the dominant estate and the enlargement of the physical dimensions of the easement." *Argosy Trust*, 141 Idaho at 573, 114 P.3d at 131. As this Court stated in *Aztec Ltd., Inc. v. Creekside Investment Co.*, 100 Idaho 566, 569, 602 P.2d 64, 67 (1979), "An increase in width does more than merely increase the burden upon the servient estate; it has the effect of enveloping additional lands."

While Northwest Pipeline presented evidence that a twenty-foot easement may be necessary for pipeline safety and maintenance under today's standards, it failed to present substantial evidence of the parties' intent concerning the intended width of the easement at the time it was granted. As plaintiff in this matter, Northwest Pipeline had the burden of demonstrating the intention of the parties to create a twenty-foot easement or that the twenty-foot easement was necessitated by conditions existing at the time of the grant. *Argosy Trust*, 141 Idaho at 572, 114 P.3d at 130. On appeal, the district court's finding of a twenty-foot easement must be supported by substantial and competent evidence. *Id.*

The evidence provided by Northwest Pipeline came from three sources: the instrument granting the easement, the testimony of Northwest's personnel regarding their current excavation practices and pipeline standards, and federal regulations concerning natural gas pipelines. This

evidence, taken together, does not support the district court's finding of a twenty-foot easement. The instrument in question only provides that an easement was granted and is silent as to its width. Northwest's operations manager, Tom Grant, testified that Northwest has guidelines in place that specify the width needed to carry out the purposes stated in the grant of easement. However, he was unaware of when the guidelines were adopted or whether they were in effect when the easement was granted in 1956. There is no evidence in the record that these guidelines or the concerns expressed in them were within the contemplation of the parties at the time the easement was granted. It is unlikely that the guidelines were in existence in their current form at the time the easement was granted because Northwest did not come into existence until 1974. Grant's testimony also relied on federal guidelines regulating the natural gas industry to demonstrate that the pipeline width found by the district court was necessary to carry out the purposes of the easement. The reliance on federal guidelines suffers from the same deficiency as Grant's reliance on Northwest's own guidelines because they were adopted well after the easement was granted and there is no showing that they, or anything comparable, were in the contemplation of the parties at the time of the grant. Despite the fact that none of these guidelines were in existence at the time the easement was granted, they appear to provide the sole basis for the district court's conclusion that twenty feet is a reasonable easement width, within the contemplation of the parties at the time the easement was granted.

The district court's decision regarding the width of the easement is primarily based upon safety concerns. In its initial findings, the court noted, "In the instant case, the need to specify the width of the right of way became acute and urgent with the 2002 enactment of the Pipeline Safety Improvement Act." The court then concluded:

> This court specifically finds that Plaintiff has met its burden of proving that a twenty foot (20') easement for the benefit of Plaintiff, on the south side of the Pipeline, continuing along the northern boundaries of the subject properties, is a reasonable interpretation of the Right of Way Contract and is the necessary width required for the safe exercise of Plaintiff's rights granted therein.

In denying the Appellants' motion for reconsideration the court stated:

> With the enactment of the Pipeline Safety Act in 2002, the need to allow for the excavation of the pipeline for maintenance became acute. The safe installation and/or excavation of the Pipeline requires a twenty foot (20') right of way.

6

Thus, the district court's conclusion was mainly based upon safety concerns that were made "acute" by the federal Pipeline Safety Improvement Act approved by Congress in 2002. That Act was obviously not in effect in 1956 when the easement was granted to Northwest's predecessor in interest. There is no evidence in the record to indicate what safety regulations were in existence at that time, as Northwest's counsel admitted at the oral argument of this case. The district court erred in considering any requirements of the 2002 Pipeline Safety Improvement Act in determining the easement width.

It is quite likely that Northwest's predecessor in interest had concern about safety issues and took them into account in determining the necessary width of its easement in the vicinity of Appellants' properties. Northwest's predecessor in interest negotiated a variety of different easement widths with neighboring property owners, evidencing a rather wide range of widths determined to be acceptable from the pipeline company's perspective. Evidence in the record indicates easement widths ranging from five feet on each side to thirty feet on each side, with a wide range in between—eight feet on each side, ten feet on each side, twenty feet on each side, seven and a half feet on one side and twenty-two and a half on the other, seventeen and a half feet on one side and thirty-two and a half on the other, and twenty feet on one side and forty feet on the other. With regard to the Churches, Northwest had expressed to the Churches' attorney in February of 2000 that it was willing to "reduce its pipeline easement from 30' to 15' subject to" the parties entering into a written agreement. The Churches subsequently declined to enter into a written agreement but presumably Northwest would not have made the offer if the 15-foot width would have compromised its ability to safely operate and maintain the pipeline.

Because the district court's findings and conclusions are based primarily on safety concerns that did not become manifest until 2002, long after the easement in question was granted, and because there is no evidence as to what, if any, safety concerns were extant in 1956, we vacate the district court's findings regarding the width of the easement across Appellants' properties, which necessitates vacation of the Judgment as well, and remand to the district court.

### III.

The Judgment of the district court is vacated and the case is remanded for further proceedings consistent with this opinion. Costs are awarded to Appellants.

Chief Justice EISMANN, and Justices BURDICK, W. JONES and HORTON CONCUR.

7