(May 15, 1907.)

## OREGON SHORT LINE RAILROAD COMPANY, Respondent, v. A. R. STALKER et al., Appellants.

[94 Pac. 56.]

RAILROAD GRANT—RIGHT TO STATION AND DEPOT SITE—FORFEITURE AND ABANDONMENT OF RIGHT.

1. Where a railway company filed a profile map of its right of way and depot and station grounds and had the same approved by the Secretary of the Interior, but failed and neglected to have the selection noted on the plats in the local land office, and the map so furnished was lost or destroyed, and no notation of the selection was ever made on the plats of the local land office, and the company failed and neglected for more than seventeen years to take possession of the grounds claimed for depot and station site, and exercised no acts of ownership or right of possession over the premises, and eight days after the filing of such profile map a pre-emptor settled and filed upon the legal subdivisions comprising and including the station and depot grounds claimed by the company, and thereafter made final proof upon and received patent for the entire legal subdivision, and had no notice, either

actual or constructive, that the railway company claimed any station and depot grounds within the limits of his pre-emption claim, and received no such notice or information until long after the receipt of his patent for the land; *held,* that the railway company under such facts and circumstances will be deemed to have forfeited and abandoned its right to claim depot and station grounds under the act of Congress of March 3, 1875, and that it will not be allowed to maintain an action of ejectment against the grantees and successors in interest of the patentee of such lands.

2. Where injury must result to one of two parties on account of the failure to discharge an act, the duty of doing which is imposed upon a third party, the consequent loss must fall upon that party in whose interest the act should have been performed, and on whom the duty devolved to see that such act was in fact performed.

(Syllabus by the court.)

APPEAL from the District Court of the Third Judicial District for the County of Ada.  Hon. George H. Stewart, Judge.

Action in ejectment by the plaintiff to recover possession of certain lots and ground claimed as depot and station site. Judgment for plaintiff and defendants appealed. *Judgment reversed.*

Hugh E. McElroy, and Frank Martin, for Appellants.

"This grant by Congress of a right of way is not an absolute fee for all purposes, but in the nature of a conditional grant and limited to use and occupation by the grantee and its successors and assigns for the purpose of maintaining and operating a railroad." (*Oregon Short Line Ry. Co. v. Quigley,* 10 Ida. 770, 785, 80 Pac. 401; *California etc. R. R. Co. v. Mecartney,* 104 Cal. 616, 38 Pac. 448; *Muhle v. New York T. & M. Co.,* 86 Tex. 459, 25 S. W. 607; *Kansas Cent. Ry. Co. v. Allen,* 22 Kan. 285, 31 Am. Rep. 190.)

The law fixes as definitely as language can the event after which the lands shall be disposed of subject to this claim, and it is conceded that such event has never yet taken place and the lands in controversy were disposed of free of this claim.

The claim for this ground was valueless until it was entered on the records of the local land office. As between plaintiff and the patentee and his assigns, the neglect of the officers became the neglect of the claimant itself.

P. L. Williams, F. S. Dietrich, and Wyman & Wyman, for Respondent.

It is stipulated in this case that the railroad company fully complied not only with the law but with all of the regulations of the Department of the Interior relative to these station grounds, and that the local officers were derelict in two respects only. They "failed and neglected to note the same (the map) upon the plats in said land office, and that the same has never been noted upon said plats to this date." There is a distinction in the law itself between "right of way" and "station grounds," in that the law makes no requirement as to the filing of maps covering station grounds, and does require the filing of a map of alignment showing the location of the right of way. "The right of the grantee in its relation to settlers on public lands attaches from the date of filing the map of definite location." (*Dakota Central R. R. Co. v. Downey,* 8 Land Dec. 115; *In re St. Paul, Minneapolis & Manitoba Ry. Co.,* 26 Land Dec. 181; *Jamestown R. R. Co. v. Jones,* 177 U. S. 125, 20 Sup. Ct. 568, 44 L. ed. 698; *Oregon Short Line v. Quigley,* 10 Ida. 770, 80 Pac. 401.)

The doctrine of "relation back to the date of the grant" has been clearly announced and uniformly adhered to by the United States supreme court. (*Railroad Co. v. Baldwin,* 103 U. S. 426, 26 L. ed. 578; *Bybee v. Railroad Co.,* 139 U. S. 663, 11 Sup. Ct. 641, 35 L. ed. 305; *Northern Pac. R. R. Co. v. Ely,* 197 U. S. 1, 25 Sup. Ct. 302, 49 L. ed. 639; *Northern Pacific R. R. Co. v. Hasse,* 197 U. S. 9, 25 Sup. Ct. 305, 49 L. ed. 643.)

The railroad company has at all times the exclusive right to the possession of its entire grant. (*Northern Pac. R. R. Co. v. Smith,* 171 U. S. 260, 18 Sup. Ct. 794, 43 L. ed. 157; *Missouri Ry. Co. v. Roberts,* 152 U. S. 114, 14 Sup. Ct. 496, 38 L. ed. 377; *New Mexico v. United States Trust*

*Co.*, 172 U. S. 171, 19 Sup. Ct. 128, 43 L. ed. 407; *Southern Pacific Co. v. Burr*, 86 Cal. 279, 24 Pac. 1032; *Northern Pacific R. Co. v. Townsend*, 190 U. S. 267, 23 Sup. Ct. 671, 47 L. ed. 1044; *Railway Co. v. Watson*, 74 Kan. 494, 87 Pac. 687.)

We have found no modern case supporting appellants' theory that the grant is only of an easement. There has been a uniform tendency toward the doctrine that the grant is of a fee.

AILSHIE, C. J.—This is an action in ejectment instituted by the plaintiff, the Oregon Short Line Railroad Company, to recover possession of four lots in Rowan's addition to the town of Meridian in Ada county. The railroad company claims this ground under the provisions of the act of Congress of March 3, 1875 (18 U. S. Stats. at Large, 482; U. S. Comp. Stats. 1901, p. 1568), granting rights of way and depot and station grounds to railway corporations that comply with and bring themselves under the provisions of that act. The defendants answered denying the allegations of the complaint and alleging a fee simple title to the lots in question through patent issued by the United States to their grantor. The case was determined on an agreed statement of facts, and it must be conceded that these facts are very meager and in some respects indefinite. Judgment was entered in favor of the plaintiff in the lower court and the defendants moved for a new trial and the motion was denied and they appealed from the judgment and order. The facts that can be gathered from the stipulation are substantially as follows: That on July 1, 1887, the Idaho Central Railway Company, the plaintiff's grantor and predecessor in interest, filed with the Secretary of the Interior a certified copy of its articles of incorporation, and duly and regularly qualified to take and hold rights of way under the act of Congress of March 3, 1875. Thereafter and on September 12, 1888, the plaintiff filed with the register of the United States land office at Boise, a profile map showing the definite location of its track and line of road from Nampa to Boise, and also its proposed station grounds,

turnouts, tracks and depots. Its profile map was filed in duplicate and was transmitted by the register to the Secretary of the Interior, and was by the secretary approved on December 15, 1888, and thereafter returned to the register of the Boise land office. It also appears that the register and receiver of the land office at Boise failed and neglected to note the depot and station grounds, sidetracks and turnouts on the plats in the land office, "and that the same has never been noted upon the said plats to this date, and that at all times since the commencement of this action said profile or plat has been missing from the United States Land Office and cannot be found." On October 18, 1888, one Joseph G. Reed filed upon 160 acres of public land, which included and embraces the land in dispute in this case, and he thereafter and on April 24, 1889, made final proof and patent issued to him on August 4, 1891. Reed thereafter by warranty deed conveyed the land to one W. H. Rowan, who platted the land now claimed by the railway company as depot and station grounds, and filed the plat thereof with the county recorder as an addition to the town of Meridian. Rowan thereafter conveyed to the defendants Stalker the four lots now in question. It appears that the railway company has never occupied or used any of the ground that it now claims for depot and station purposes. On the other hand, the only specific evidence we have of the entryman or his grantees exercising any particular acts of dominion or ownership or right of possession over this ground is that of Rowan's platting the ground as an addition to the town of Meridian. This, however, is very clear evidence that Rowan at that time claimed the ground as his own, and did not recognize it as belonging to the railway company or the railway company having any right thereto. We are not advised, however, as to when this ground was platted for townsite purposes. It is stipulated that the road from Nampa to Boise was constructed and in operation prior to September 1, 1888. This fact is abundantly sufficient under a long line of authorities to give the entrymen who thereafter filed upon the land notice of the definite location of the line of road so as to withdraw the right

of way from entry and purchase. (See cases cited and reviewed in *Oregon Short Line R. R. Co. v. Quigley,* 10 Ida. 770, 80 Pac. 401.) The evidence, on the other hand, does not show that the company had established a station at Meridian at that time. On the contrary, it is admitted that it had not taken possession of any ground outside of its right of way, and was not apparently occupying or claiming any station or depot grounds or exercising any right of possession over any ground that it claimed or intended to claim outside of or beyond that granted for right of way.

The appellants claim that in order for the railway company to withdraw the twenty acres allowed it for station purposes, it was necessary, as a condition precedent, that it file its map and plat thereof and have the same approved by the Secretary of the Interior, and also have the register and receiver note the selection and reservation on the plats in the local land office in order to give notice of the claim to an entryman who might file upon and receive patent for the legal subdivision in which such station grounds are located. Section 4 of the act of March 3, 1875, is as follows: "That any railroad company desiring to secure the benefits of this act, shall, within twelve months after the location of any section of twenty miles of its road, if the same be upon surveyed lands, and, if upon unsurveyed lands, within twelve months after the survey thereof by the United States, file with the register of the land office for the district where such land is located a profile of its road; and upon approval thereof by the Secretary of the Interior, the same shall be noted upon the plats in said office; and thereafter all such lands over which such right of way shall pass shall be disposed of subject to such right of way; Provided, that if any section of said road shall not be completed within five years after the location of said section, the rights herein granted shall be forfeited as to any such uncompleted section of said road." It will be noted that to literally follow the provisions of this statute there is no method pointed out for the company to acquire the right to the use of station grounds except by actually entering upon, appropriating and using the land for such purposes. The

statute does not in so many words say that the company shall make and file a profile of its station grounds, but rather of its right of way. Still the Department of the Interior seems to have required profiles of rights of way to include station grounds the same as the right of way, and has considered the right of appropriation and use vested in the same manner. (*In re St. Paul, Minneapolis and Manitoba Ry. Co.*, 26 Land Dec. 181; *In re Hamilton Pop'e*, 28 Land Dec. 402.) The purpose of filing such plats and maps and their approval by the Department has been to give notice both to the government and the prospective settler and purchaser of the lands as to the location of the road and the grounds claimed for such purposes. Where, however, the road is actually under construction, or has been constructed prior to the selection by the settler, it has been uniformly held that the construction of the road upon the ground furnished actual notice and supplied the place of constructive notice given by the filing of plats. Now, if the reasoning of these cases is followed a step further, we would conclude that in the case of depot grounds the plat in the local land office must either show the grounds claimed by the company, or in the absence of such a constructive notice, then the company must be in possession of the grounds claimed for such purposes in order to furnish the settler with actual notice. It seems to be the purpose and intent of the government to give either actual or constructive notice to settlers and purchasers of the public lands over which rights of way are claimed and on which depot grounds are selected. The act of March 3, 1875, seems to require that the purchaser of lands over which a right of way is claimed or on which depot grounds are selected, shall pay for the entire legal subdivision, and that he takes the title to the whole thereof "subject to such right of way," says the statute. The rules of the Interior Department also require that the settler shall pay for the whole subdivision and his patent is accordingly issued therefor. It seems to be a conceded fact in this case that the profile map or plat filed by the company with the Secretary of the Interior showed these grounds as claimed by the company for depot pur-

poses, and the whole trouble revolves about the fact that this selection was never noted on the plats in the local land office, and that plat was lost or misplaced and was never supplied.

Counsel for respondent contend that this was a mere clerical duty required to be performed by the register and receiver of the land office, and that their failure to do so was no fault of the railway company. Counsel for appellant, however, contend that since the only acts required to be performed by the company in order to reserve this land was the filing of the plat or map and having it approved and the selection noted on the plats in the local land office, it was the duty of the company to see to it that all these acts were performed, and that the failure to do so was more the fault of the company than it was of the settler or purchaser of these lands, and that the loss should therefore fall upon the one most culpable and blamable therefor. It appears to us that since the railway company had not taken actual possession of the grounds claimed for depot and station site, and have never done so, and have never exercised any acts of control or ownership or evidenced any claim of the right of possession, and have never seen to it that the selection was properly noted on the plat, the loss should more justly and properly fall upon it than upon the settler and purchaser. Defendant testifies that he never had any notice or information that the company claimed any more ground than was embraced in its right of way, and it does not appear that his grantor or the original settler and patentee ever had any notice or knowledge of such claim on the part of the railway company. If this claim can be maintained against the defendant, there is not a doubt but that a like claim could be maintained against any other settler along the line of respondent's road between Boise and Nampa. It is easy to understand how a settler would take a forty or eighty acre tract with a railroad right of way running across it, but it would be very different with one taking a forty or eighty acre tract, or even a hundred and sixty, where he had not only to give a 200 foot right of way, but twenty acres additional for depot grounds. And again, where he has neither actual nor constructive notice of the

claim nor of its definite location within the bounds of his pre-emption, he has absolutely no protection. Here the matter ran for over seventeen years before the company asserted any right or claim to this ground. During such time as it maintained a station at Meridian all its buildings and side-tracks were on its right of way. It seems to us that whatever right the railway company may have initiated by filing its profile map with the Secretary and procuring his approval thereof, it forfeited and lost the same through failure to perfect and mature the claim by either completing the constructive notice in having the selection noted on the land office plats or in the absence of that by taking possession of the grounds claimed.

The statute, after enumerating the acts to be performed, namely, filing the profile map, and its approval by the Secretary and the notation on the plats of the local office, provides that "thereafter,"—subsequently, afterward, after that,—all such lands over which rights of way pass "shall be disposed of subject to such right of way." This of course has reference only to the purely constructive notice where the road has not been built and no possession has been taken. The "thereafter" used in this statute must refer as much to the notation on the plats of the local land office as to the filing of the plat itself, but when once done would probably relate back to the date of the first act—that is, to the filing of the plat; provided the land had not in the meanwhile been "disposed of."

The judgment in this case should be reversed and a new trial granted, and it is so ordered, and the cause is remanded. Costs of appeal awarded in favor of appellants.

Sullivan, J., concurs.

Stewart, J., did not sit at the hearing or take any part in the decision.