92 P.3d 537

**Katherine M. MILLER, a single woman, Plaintiff–Appellant,**

v.

**Rita SIMONSON, a single woman; and Judy C. Simonson, a single woman, Defendants–Respondents.**

**No. 28537.**

Supreme Court of Idaho, Boise, March 2004 Term.

June 24, 2004.

Hawley Troxell Ennis & Hawley LLP, Boise, for appellant. Lynnette M. Davis argued.

Rigby Thatcher Andrus Rigby Kam & Moeller, Chartered, Rexburg, for respondents. Gregory W. Moeller argued.

TROUT, Chief Justice.

Appellant Katherine Miller (Miller) appeals the district court's grant of partial summary judgment in favor of Respondents Rita and Judy Simonson (the Simonsons), finding that Miller had constructive notice of the Covenants, Conditions and Restrictions (CC & R's) placed upon a ten-acre tract of land she purchased in Teton County in 1997. Miller appeals the district court's determination on the basis that she had no actual notice of the CC & R's and also had no constructive notice because the CC & R's were incorrectly indexed by Teton County. We affirm.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

In 1990 the Simonsons acquired real property in Teton County that they then platted into a subdivision called Redfeather Ranch. As a part of the subdivision, the Simonsons submitted for recording in the Teton County records, CC & R's restricting the use of their property. These restrictions included rules that only allowed property owners to construct fences of wood, that prohibited property owners from constructing any building within 100 feet of a property boundary, and which prohibited owners from keeping more than ten horses on a ten-acre parcel of land. However, the CC & R's were improperly indexed by Teton County officials under the name "Redfeather Ranch" instead of under the names of the Simonsons. Consequently, these CC & R's do not appear in the grantor-grantee index under the names of the Simonsons.

In 1994 the Simonsons submitted an Amendment to the CC & R's to Teton County to be recorded. The Amendment was not properly acknowledged and again, the instrument was improperly indexed by Teton County under the name Redfeather Ranch instead of under the names of the Simonsons.

The Redfeather Ranch subdivision included a particular ten-acre parcel ("the Property") that the Simonsons sold to Michael and Floyce Gallagher in 1990. In February 1997, Miller purchased the Property from the Gallaghers. Miller claims that at no time

prior to the purchase did she receive actual notice of the CC & R's, even after specifically asking Michael Gallagher about any restrictions on use. Because Miller purchased the Property with the intent of raising and breeding horses, she constructed a shed within 100 feet of her property boundary and placed metal fence posts on the Property in furtherance of her plans.

In July 1997, Rita Simonson informed Miller of the existence of the CC & R's and demanded that Miller remove the fence posts and shed as they were in violation of its terms. In June 1998, Miller filed a declaratory judgment action in the district court alleging that because she had no actual or record notice of the CC & R's, she could not be forced to comply with them. On a motion for partial summary judgment by Miller, the district court found that because the Amendment to the CC & R's was not properly acknowledged it could not have been recorded, and therefore Miller could not have had notice as to its terms.

As to the original CC & R's, the district court found for the Simonsons, ruling that even though the CC & R's were not properly indexed by Teton County, the cases of *Oregon Short Line R.R. Co. v. Stalker,* 14 Idaho 362, 94 P. 56 (1908) and *O'Connor v. Board of Comm'rs,* 17 Idaho 346, 105 P. 560 (1909) are controlling and dictate that if a party submits an instrument governing real property to be recorded but the recording official fails to properly record it, subsequent purchasers of that real property are still on notice as to the instrument.

The Simonsons do not appeal the district court's findings as to the Amendment. Both parties stipulated to entry of a partial summary judgment and a Rule 54(b) certificate on the sole issue of whether the district court erred in holding that a subsequent purchaser of real property is charged with constructive notice of an instrument submitted for recording but improperly indexed by the official responsible for recording such instruments.

## II.

### STANDARD OF REVIEW

In reviewing the district court's decision on a motion for summary judgment, the standard of review is whether there are any genuine issues of material fact, and, if not, whether the prevailing party was entitled to judgment as a matter of law. I.R.C.P. 56(c). If the evidence shows no disputed issues of material fact, what remains is a question of law, over which the appellate court exercises free review. *Sacred Heart Medical Center v. Boundary County,* 138 Idaho 534, 535, 66 P.3d 238, 239 (2003). When there is controlling precedent in Idaho law "the rule of stare decisis dictates that we follow it, unless it is manifestly wrong, unless it has proven over time to be unjust or unwise, or unless overruling it is necessary to vindicate plain, obvious principles of law and remedy continued injustice." *Houghland Farms, Inc. v. Johnson,* 119 Idaho 72, 77, 803 P.2d 978, 983 (1990).

## III.

### THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT

The primary issue in this case is whether an instrument submitted for recording according to law is considered to give constructive notice to subsequent purchasers when the recording officials do not properly record the instrument. In this case, we acknowledge that neither party is at fault for the circumstances giving rise to this appeal. The Simonsons presented the validly acknowledged CC & R's to the Teton County officials to be recorded. Because of the recording error in which the CC & R's were recorded under the name of "Redfeather Ranch" instead of the individual names of the Simonsons, Miller could not have realistically found the CC & R's by inspecting the grantor-grantee index, which normally gives notice of such instruments. Consequently, the rule of law promulgated by this Court will necessarily injure the interests of an innocent party.

I.C. § 55–809 defines when an instrument is validly recorded for purposes of giving constructive notice to subsequent purchasers. This statute states: "An instrument is deemed to be recorded when, being duly acknowledged, or proved and certified, it is

deposited in the recorder's office with the proper officer for record." Furthermore, I.C. § 55-811 directs:

Every conveyance of real property acknowledged or proved, and certified, and recorded as prescribed by law, from the time it is filed with the recorder for record, is constructive notice of the contents thereof to subsequent purchasers and mortgag(e)es.

Every conveyance of real property acknowledged or proved, and certified, and recorded as prescribed by law, and which is executed by one who thereafter acquires an interest in said real property by a conveyance which is constructive notice as aforesaid, is, from the time such latter conveyance is filed with the recorder for record, constructive notice of the contents thereof to subsequent purchasers and mortgagees.

These two statutes provide what must be done by a person desiring to record a document so as to provide notice to other people. They are the crux of Idaho's constructive notice recording laws.

■ On appeal, Miller argues that certain sections in Title 31, Chapter 24 of the Idaho Code further this definition of when an instrument is deemed to be recorded. These sections, designating the recording official's duties when presented with a document for recording, do state that a recorded instrument is to be listed in the grantor-grantee index under the name of the party recording the instrument. Specifically, I.C. § 31-2413 provides that when presented with an instrument to be recorded, a county recorder should note in the index "the grantor, or person executing the instrument; [and] the grantee, or person to whom the instrument is executed, if there be such." Miller argues these statutory duties are meant to be part of the recording process and as such, an instrument cannot be considered recorded for purposes of constructive notice unless the county recorder takes these steps.

Though the steps required of county recorders in Title 31, Chapter 24 are necessary elements of the recording process, they were not meant by the legislature to be part of the process that designates when an instrument

is deemed recorded for purposes of constructive notice. I.C. §§ 55-809 and 55-811 clearly state than an instrument is deemed to be recorded for purposes of constructive notice when it is duly acknowledged and presented to the recorder's office for recording. We do not read the provisions of Title 31, Chapter 24 in derogation of those statutes to say that something more is required in order for an instrument to be deemed recorded for constructive notice purposes. Sections 55-809 and 55-811 designate what the recording party's responsibilities are, and Title 31, Chapter 24 sets forth what the county recorder's duties are once the document is received.

The district court ruled that the prior cases of *Oregon Short Line R.R. Co. v. Stalker*, 14 Idaho 362, 94 P. 56 (1908) and *O'Connor v. Board of Comm'rs*, 17 Idaho 346, 105 P. 560 (1909) are controlling in this case and mandate that where a recording party presents a valid instrument to be recorded but the recording official does not record it properly, subsequent purchasers are still charged with constructive notice of the instrument. This Court asserted in *Oregon Short Line*:

[T]he great weight of authority seems to be that, when a grantee has duly deposited for record a valid instrument at the proper time, at the proper office, and with the proper officer, he has performed his whole duty, and subsequent purchasers will be charged with constructive notice, notwithstanding the officer does not spread the instrument on the records or fails to record it at all.

14 Idaho at 369-70, 94 P. at 63-64. In *O'Connor*, this Court affirmed the ruling in *Oregon Short Line*, stating:

Applying this principle to the case under consideration, when a proper petition was presented at a proper time to the officer named in the law, to wit, the auditor, and left with him for filing, it was filed. The petitioners had done all that the law required of them, and their rights could not be jeopardized by any failure of the officer to make the proper indorsements upon such petition.

17 Idaho at 347–48, 105 P. at 561–62. Though we recognize that neither *Oregon Short Line* nor *O'Connor* dealt directly with Idaho's recording statutes, both are still applicable to a controversy involving the recording statute and constructive notice. Both stand for the principle that when a document is properly presented for recording and the person responsible for properly recording it fails to do so, subsequent purchasers are still charged with the constructive notice a properly recorded instrument would have provided to them. As this Court explained in *Oregon Short Line*, "[i]t is a well-established principle that where an individual in the prosecution of a right does everything which the law requires him to do, and he fails to attain his right by the misconduct or neglect of a public officer, the law will protect him." 14 Idaho at 369, 94 P. at 63.

Though it is true that it is possible for recording parties to check with the county recording officials to ensure their instruments are recorded properly, such an argument assumes that the recording parties would be knowledgeable enough to know what they needed to check for and in what index they needed to look. Such a policy would require average laypersons to determine not only that the document was file stamped and signed, but also that it made it into the proper index. This is not a realistic expectation. And, where not all recording errors take place during the initial recording of an instrument, such a rule would not completely prevent all subsequent conflicts such as the one before us here.

While a recording party has no recourse when an instrument is improperly recorded, the same is not typically true for a subsequent purchaser. It is common practice now for purchasers to obtain title insurance that may very well provide some recourse to the buyer for her damages.[1] Additionally, a purchaser may in theory bring suit against a prior owner of the property if there is sufficient proof that the prior owner had knowledge of such restrictions and failed to disclose them.

Consequently, we find the rule of law established by this Court nearly a century ago is still valid precedent on this issue. The Idaho recording statute clearly establishes that once an instrument has been acknowledged, certified, and presented for recording it provides constructive notice to all subsequent purchasers regardless of whether the instrument is thereafter properly recorded by county officials or not.

## IV.

## CONCLUSION

We affirm the district court's determination that a subsequent purchaser must bear the risk of improperly recorded instruments when the recording party has fully satisfied the requirements of the Idaho recording statute. We award costs on appeal to the Simonsons.

Justices SCHROEDER, KIDWELL, and BURDICK concur.

Justice EISMANN concurs in the result.

Idaho Code § 55–809 states, "An instrument is deemed to be recorded when, being duly acknowledged, or proved and certified, it is deposited in the recorder's office with the proper officer for record." Under this statute, a duly acknowledged instrument is deemed recorded when it is delivered to the proper person in the recorder's office. It is undisputed that the original CC & R's were deemed recorded under this statute. They were duly acknowledged and deposited with the proper officer in the recorder's office to be recorded.

The legal effect of an instrument deemed recorded is provided by Idaho Code § 55–811, which states, insofar as is relevant, "Every conveyance of real property acknowledged or proved, and certified, and recorded as prescribed by law, from the time it is filed with the recorder for record, is constructive notice of the contents thereof to subsequent

---

1. We note that counsel representing Miller in this case acknowledged at oral argument that the same firm representing Miller also represents the title insurance company involved in this case, where there is at least a potential for a conflict of interest between the buyer and her title insurance company.

purchasers and mortgag(e)es." Idaho Code § 55–811 provides that a conveyance [1] of real property recorded as provided by law—as provided by Idaho Code § 55–809—is constructive notice to subsequent purchasers "from the time it is filed with the recorder for record." It is constructive notice from the time it is filed "with the recorder," not from the time it is filed or indexed by the recorder. Constructive notice imparted from the record is a matter of statute. *Kalange v. Rencher*, 136 Idaho 192, 30 P.3d 970 (2001). Thus, because the CC & R's were deemed recorded under Idaho Code § 55–809, such recording gave constructive notice of their contents to subsequent purchasers under Idaho Code § 55–811, including Miller.

---

1. Because the CC & R's affect title to real property, they constituted a "conveyance" as that term is used in Idaho Code § 55–811. Idaho Code § 55–813; see *Haugh v. Smelick,* 126 Idaho 481, 483, 887 P.2d 26, 28 n. 4 (1993).