# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 35323-2008

<table>
<tr><td>

LAKE CDA INVESTMENTS, LLC, and<br>
CHRIS KEENAN,<br><br>

    Plaintiffs-Respondents,<br><br>

v.<br><br>

IDAHO DEPARTMENT OF LANDS;<br>
THE IDAHO STATE BOARD OF LAND<br>
COMMISSIONERS; and, THE STATE OF<br>
IDAHO,<br><br>

    Defendants-Appellants,<br><br>

and<br><br>

IDAHO DEPARTMENT OF<br>
TRANSPORTATION,<br><br>

    Intervenor-Appellant.

</td><td>

Coeur d'Alene, April 2010 Term<br><br>

2010 Opinion No.  63<br><br>

Filed: June 2, 2010<br><br>

Stephen W. Kenyon, Clerk

</td></tr>
</table>

Appeal from the District Court of the First Judicial District of the State of Idaho, in and for Kootenai County.  The Hon. John T. Mitchell, District Judge.

The judgment of the district court is <u>affirmed</u> in part and <u>reversed</u> in part.

The Hon. Lawrence G. Wasden, Attorney General, Boise, for appellants.  David Stanish argued on behalf of the Idaho Department of Lands and Chris Kronberg argued on behalf of the Idaho Department of Transportation.

John F. Magnuson, Coeur d'Alene, for respondents.

_____

EISMANN, Chief Justice.

This is an appeal from a judgment of the district court vacating the denials of the respondents' applications for dock permits on Lake Coeur d'Alene and awarding judgments for court costs and attorney fees against the Idaho Department of Lands and the Idaho

Transportation Department. We affirm the judgment vacating the denial of the dock permits, and we reverse the judgments for court costs and attorney fees.

## I. FACTS AND PROCEDURAL HISTORY

Lake CDA Investments, LLC, and Chris Keenan (Landowners) each own property littoral to Lake Coeur d'Alene. In 1911, one of the Landowners' predecessors in interest granted Kootenai County a sixteen-foot wide easement across the properties for a road. In 1925, that easement was expanded by grant to fifty feet in width. In 1940, another predecessor in interest conveyed a right of way across the properties to the State of Idaho. That deed (1940 Deed) purported to grant the State a right of way that was 125-feet wide. The legal description of the right of way extended a considerable distance out into the lake. Only 0.92 acres of the right of way was on the grantors' property, and the remaining 1.240 acres consisted of state-owned lakebed. The 1940 Deed did not purport to transfer any riparian rights to the state, or to extinguish the grantors' riparian rights. The State widened the existing road into a four-lane highway. On that portion of the highway at issue in this case, the State placed substantial fill into the lake along the shoreline in order to widen and straighten the road.

In the 1990's, the Idaho Transportation Department removed the two lanes of the highway bordering on the lake and erected a guardrail along that portion of the highway to divide the remaining two traffic lanes from the strip of land from which the two traffic lanes were removed. That strip of land was converted into a bicycle/pedestrian trail and a park. On October 2, 1998, the Transportation Department and the Idaho Department of Parks and Recreation (Parks Department) entered into a written agreement under which the Transportation Department agreed that it will "[r]etain jurisdiction, responsibility for, and provide maintenance of the traffic roadway surface," and the Parks Department agreed that it will "[a]ccept in full and every respect the maintenance and operation of and responsibility for the section of the bicycle/pedestrian trail."

The State Board of Land Commissioners has the power to grant encroachments in aid of navigation in or above the beds of navigable lakes, I.C. § 58-1303, which includes Lake Coeur d'Alene. It exercises that power through the Idaho Department of Lands. I.C. § 58-101. For convenience, they will both be referred to as the "Land Board."

2

In July 2006, Lake CDA Investments, LLC, submitted an application seeking permission to construct a single family dock that would be contiguous with the shoreline of its property. In November 2006, Chris Keenan submitted an application seeking permission to construct a single-family dock that would be contiguous with the shoreline of his property. The Transportation Department objected to both applications. The Land Board combined both applications for hearing before a hearing officer, who held an evidentiary hearing on March 30, 2007.

A surveyor employed by the Transportation Department testified that in his opinion the 1940 Deed made the Landowners' riparian rights "subordinate to the easement" in front of their properties. His testimony indicated that he believed the easement granted by the 1940 Deed extended out into the lake.

On May 18, 2007, the hearing officer issued his proposed findings of fact, conclusions of law, and recommendation. He held that "[i]t is established precedent in Idaho that a right-of-way can sever riparian rights"; that "the littoral right became subordinate to the 'highway' with the 1940 Right-Of-Way Deed"; and that "[w]hen that subordination occurred, the property lost those parts of their littoral rights which support the ability to wharf out." He concluded that without those littoral rights, the owners of the properties were not qualified to apply for a dock permit.

He also concluded that the Transportation Department still owns the highway; that the navigational encroachments will be placed on the highway; and that the Department believes "the navigational encroachments will potentially compromise the road prism and potentially limit their ability to maintain and repair that road prism and therefore [it] will not authorize, or permit, the subject navigational encroachments." This latter finding was based upon conclusory hearsay testimony provided by the surveyor who testified on behalf of the Transportation Department.

The hearing officer recommended that the dock permits be denied. The Land Board accepted the hearing officer's findings of fact and conclusions of law and denied the dock permits.

The Landowners each timely filed a petition for review with the district court. The Transportation Department sought and was granted permission to intervene, and both appeals were consolidated. The district court held that neither the 1940 Deed granting the State an easement down to the ordinary high water mark nor the State's action in placing fill in the lake

3

affected the Landowners' littoral rights. The court therefore vacated the Land Board's decisions denying the Landowners' respective applications for dock permits. The court also held that the Landowners were entitled to an award of court costs and attorney fees pursuant to Idaho Code § 12-117. It awarded judgments for court costs and attorney fees totaling $23,128.51 against the Land Board and Transportation Department, and they both timely appealed.

## II. ANALYSIS

The denials of the Landowners' applications to construct navigational encroachments were subject to review by the district court pursuant to Idaho Code §§ 58-1305(c) and 58-1306(c). The Land Board's decisions must be affirmed unless its findings and conclusions are: (a) in violation of constitutional or statutory provisions; (b) in excess of its statutory authority; (c) made upon unlawful procedure; (d) not supported by substantial and competent evidence; or (e) arbitrary, capricious, or an abuse of discretion. *Dupont v. Idaho State Bd. of Land Comrs.*, 134 Idaho 618, 621, 7 P.3d 1095, 1098 (2000). "When the district court acts in its appellate capacity, we review the decision of the district court to determine whether it correctly decided the issues presented to it on appeal." *Idaho Dept. of Health and Welfare v. Doe*, 148 Idaho 124, 126, 219 P.3d 448, 450 (2009).

### A. Did the 1940 Right-of-Way Deed Extinguish the Grantors' Littoral Rights?

In reaching its decision, the Land Board stated, "It is established precedent in Idaho that a right-of-way can sever riparian rights." It then held that the littoral rights associated with the Landowners' properties were subordinate to the highway easement granted by the 1940 Deed and that "[w]hen that subordination occurred, the property lost those parts of their littoral rights which support the ability to wharf out." Without those littoral rights, the Board held that the Landowners were not qualified to apply for dock permits. The district court held that the 1940 Deed granted the State only an easement[1] and that the easement did not extinguish any of the grantors' littoral rights.

---

[1] When the 1940 Deed was granted, the State took only an easement. Idaho Code Annotated § 39-301 (1932) provided:

> Public acquires only an easement. – By taking or accepting land for a highway, the public acquires only the right of way and the incidents necessary to enjoying and maintaining it. All

The Land Board argues that the district court erred because the easement granted by the 1940 Deed is subject to the Transportation Department's easement. According to the Board, "The Land Board's finding that the Applicants' use of the shoreline for docking purposes was subject to ITD's use of the same for highway purposes pursuant to the 1940 right-of-way deed was supported by well established principles of easement law." It is not clear what the Land Board understood the width of the easement to be. Not all of the testimony of the surveyor who testified regarding this issue on behalf of the Transportation Department is preserved in the record.[2] However, it appears from his testimony that he believed the size and location of the easement are reflected in the 1940 Deed. The Land Board's findings referred to the easement without stating its size.

The 1940 Deed did not grant an easement over the land at issue. Under Idaho law, a littoral owner on a navigable lake takes title down to the ordinary high water mark as it existed in 1890 when the State was admitted into the union, and the title to the lakebed below the ordinary high water mark is held by the State in trust for the use and benefit of the public. *In re Sanders Beach*, 143 Idaho 443, 453, 147 P.3d 75, 85 (2006). Because they did not own the land below the ordinary high water mark, the grantors under the 1940 Deed could not convey an easement to the State in the lakebed below the ordinary high water mark. They could not grant an easement in land they did not own. *Williams v. Sherman*, 36 Idaho 494, 507, 212 P. 971, 976 (1922). The easement they granted only extended down to the ordinary high water mark. The State then added fill on State land (the lakebed below the ordinary high water mark) in order to widen the highway to four lanes and to straighten it. It later removed the two traffic lanes closest to the lake, and that land became a bicycle/pedestrian trail and a park. That trail and park are located

---

trees within the highway, except only such as are requisite to make or repair the road or bridges on the same land are for the use of the owner or occupant of the land.

That statute had existed since territorial times. Idaho Terr. Rev. Stat. § 860 (1887). In 1953, the legislature amended the statute so that it would read as follows:

Public acquires fee simple title. By taking or accepting land for a highway, the public acquires the fee simple title to said property. Providing that the person or persons having jurisdiction of such highway may take or accept such lesser estate as they may deem requisite for their purposes.

Ch. 100, § 1, 1953 Idaho Sess. Laws 134, 135. No party has challenged on appeal the district court's finding that the 1940 Deed granted only an easement.

on the fill. If the Landowners were granted their requested dock permits, the ramps from the docks to the shore would end on the fill. Because the Transportation Department does not have an easement over the fill, the littoral rights could not be subject to such nonexistent easement.

The Transportation Department argues that the district court erred in concluding that this case is not controlled by *Bowman v. McGoldrick Lumber Co.*, 38 Idaho 30, 219 P. 1063 (1923). That case held that the owner of lots abutting on Lake Coeur d'Alene did not have any littoral rights along that portion of the shoreline over which there was a railroad right of way that extended down to the ordinary high water mark of the lake. The *Bowman* court based its decision upon the conclusion that "the nature of the grant made in this case as to the right of way and station grounds is *a base, qualified, or limited fee and is more than a mere easement*, giving the exclusive possession and right of use of the land for the purposes contemplated by the law." *Id.* at 33, 219 P. at 1064 (emphasis added).

Analysis of the *Bowman* decision should begin with the decision of the United States Supreme Court in *Missouri, Kansas and Texas Railway Co. v. Roberts*, 152 U.S. 114 (1894), which was an action in ejectment to recover possession of lands held by the railroad company pursuant to the Act of July 26, 1866 (14 Stat. 289). The Act included a provision stating, "That the right of way [200 feet wide] through the public lands be, and the same is hereby, granted to said Pacific Railroad Company, southern branch, its successors and assigns, for the construction of a railroad as proposed . . . ." § 6, 14 Stat. 289, 290. The Supreme Court held that "[t]he title to the land for the 200 feet in width thus granted vested in the company, either upon the passage of the act of congress, July 26, 1866, or upon the construction of the road . . . ." 152 U.S. at 116.

Four years later, in *Territory of New Mexico v. United States Trust Co. of New York*, 172 U.S. 171 (1898), the Supreme Court addressed the issue of what is meant by the phrase "right of way" in the grant of a right of way to a railroad. The Court stated, "So, this court in *Railway Co. v. Roberts*, 152 U.S. 114, 14 Sup. Ct. 496, passing on a grant to one of the branches of the Union Pacific Railway Company of a right of way 200 feet wide, decided that it conveyed the fee." 172 U.S. at 182. The Territory sought to distinguish that case on the ground that the distinction between an easement and the fee was not raised. The Court responded to that argument by stating, "The difference between an easement and the fee would not have escaped his [Mr.

---

[2] Much of his testimony is pointing to what is shown on exhibits, but where he was pointing is not preserved in the record.

Justice Field's] attention and that of the whole court, with the inevitable result of committing it to the consequences which might depend upon such difference." *Id.* It also added, "But if it may not be insisted that the fee was granted, *surely more than an ordinary easement was granted, one having the attributes of the fee*, perpetuity and exclusive use and possession; also the remedies of the fee, and, like it, corporeal, not incorporeal, property." *Id.* at 183 (emphasis added).

In *Oregon Short Line Railroad Co. v. Stalker*, 14 Idaho 362, 377, 94 P. 56, 60 (1907), this Court addressed the nature of a railroad's right to land granted adjacent to its right of way for "station-buildings, depots, machine shops, side-tracks, turn-outs, and water-stations" pursuant to the Act of March 3, 1875. § 1, 18 Stat. 482, 482. The railroad's predecessor had complied with the statutory requirements for obtaining a grant of land in Meridian, Idaho, for a station and depot. The land office lost or misplaced the map designating the land granted and did not record the grant on its plat. Thereafter, the government issued a patent to 160 acres of land, which included the land granted to the railroad. The 160 acres were later platted, and the defendant-appellant purchased four of the lots. The railroad brought an action to eject him from those lots, claiming that they were part of the land granted to the railroad for station and depot purposes. At that point, the railroad had never occupied or used any of that ground. The trial court granted judgment for the railroad, and the purchaser of the four lots appealed. In holding for the railroad, this Court stated:

> There [*Territory of New Mexico v. United States Trust Co. of New York*, 172 U.S. 171, 183 (1898)] it is held that such grants have the "attributes of the fee, perpetuity and exclusive use and possession." There is nothing in the contention of counsel that the appellant who holds the legal title has the right to the use and possession of said station ground until it is needed by the company, as the company, under the authorities, has the exclusive right to the use, possession, and occupation of the ground, whether its buildings and improvements cover it all or not.

14 Idaho at 390, 94 P. at 65.

The railroad right of way at issue in *Bowman v. McGoldrick Lumber Co.,* 38 Idaho 30, 219 P. 1063 (1923), was based upon the Act of March 2, 1899 (30 Stat. 990) under which railroads could obtain rights of way through Indian reservations. The *Bowman* court noted that this Act was similar to the Act considered by the court in the *Oregon Short Line* case. *Id.* at 33, 219 P. at 1064. In holding that a railroad right of way was a base, qualified, or limited fee and

7

more than a mere easement, the *Bowman* court quoted the above-quoted portion of the *Oregon Short Line* decision. It then stated,

> Under said decision it is apparent that the nature of the grant made in this case as to the right of way and station grounds is a base, qualified, or limited fee and is more than a mere easement, giving the exclusive possession and right of use of the land for the purposes contemplated by the law; a reversionary interest remaining in the United States to be conveyed by it to the person to whom the land may be patented whose rights will be subject to those of the grantee of the right of way and station grounds.

*Id.*[3] Thus, the *Bowman* court based its holding that the landowner had no littoral rights because of the railroad right of way that extended along the shore down to the ordinary high water mark upon the understanding that the railroad right of way "is a base, qualified, or limited fee and is more than a mere easement."

Nineteen years later, the United States Supreme Court addressed the issue of grants for railroad rights of way made under statutes enacted after 1871, which would include the statute under which the right of way was granted in *Bowman*. In *Great Northern Railway Co. v. United States*, 315 U.S. 262 (1942), the issue was whether the railroad had any right to the oil and minerals underlying its right of way acquired under the Act of March 3, 1875. The Court noted, "Beginning in 1850 Congress embarked on a policy of subsidizing railroad construction by lavish grants from the public domain. This policy incurred great public disfavor . . . . After 1871 outright grants of public lands to private railroad companies seem to have been discontinued." 315 U.S. at 273-74. The Court held, "The Act of March 3, 1875, from which petitioner's rights stem, clearly grants only an easement, and not a fee." 315 U.S. at 271. Thus, the *Bowman* court was incorrect in holding that the railroad right of way "is a base, qualified, or limited fee and is more than a mere easement." 38 Idaho at 33, 219 P. at 1064.

The Transportation Department contends that because the *Bowman* court incorrectly based its decision upon the premise that a railroad right of way was a base, qualified, or limited

---

[3] The *Bowman* court incorrectly stated that the quoted portion of the *Oregon Short Line* decision was speaking about *Missouri, Kansas and Texas Railway Co. v. Roberts*, 152 U.S. 114 (1894). The *Oregon Short Line* court had quoted from the *Territory of New Mexico* case, including that Court's discussion of the *Missouri, Kansas and Texas Railway Co.* case. The *Oregon Short Line* court then wrote, "And the court further said: . . . ." The court to which it was referring was the court in the *Territory of New Mexico* case, but the *Bowman* court incorrectly wrote that it was referring to the court in the *Missouri, Kansas and Texas Ry. Co.* case.

fee which is more than a mere easement, its opinion should now be read as holding that a mere easement can extinguish littoral rights. The Department argues as follows:

> In *Bowman* v. *McGoldrick Lumber Co.,* 38 Idaho 30, 219 P. 1063 (1923), this Court held that a railroad right-of-way, granted pursuant to an act of Congress, "is a base, qualified, or limited fee and is more than a mere easement, giving the exclusive possession and right of use of the land for the purposes contemplated by the law . . . ." *Bowman,* 38 Idaho at ___, 219 P. at l064. Based on such reasoning, this Court held that the landowner, Bowman, had no riparian rights where the railroad easement went down to high water mark of Lake Coeur d'Alene. *Bowman,* 38 Idaho at ___, 219 P. at 1065.
> . . . .
> . . . . If [due to the decision in *Great Northern Railway Co.*] the grant was an easement rather than a grant in fee, then clearly *Bowman* stands for the proposition that an easement can sever or subordinate littoral rights attached to the underlying property, thereby depriving the fee owner of the ability to exercise such rights.

The Department's reasoning is flawed. It acknowledges that the holding in *Bowman* was based upon the court's understanding that the railroad right of way "is a base, qualified, or limited fee and is more than a mere easement, giving the exclusive possession and right of use of the land for the purposes contemplated by the law." Nineteen years later, the United States Supreme Court decided the *Great Northern Railway Co.* case, which showed that the *Bowman* court mischaracterized the nature of the easement. If the *Bowman* court had known that the right of way was only an easement, there is no logical reason to believe that the *Bowman* court would have arrived at the same holding. Since it stressed as the basis for its decision that the railroad right of way was more than a mere easement, there is no logical reason to believe it would have reached the same result had it known that the right of way was only a mere easement.

The Department also argues that a highway right of way is not a "mere easement," but is similar to a railroad easement, and therefore the *Bowman* holding should apply to this case. Citing *State ex rel. Burns v. Kelly*, 89 Idaho 139, 403 P.2d 566 (1965), it argues that "not even the fee owner of the land underlying a public highway has the right to encroach on the highway easement." That case addressed the right of the State to compel a landowner to remove a sign from a state highway right of way where the State had only an easement for the right of way. The highway at issue in that case was a federal aid project, and federal regulations provided that "all real property, including air space, within the right-of-way boundaries of a project shall be devoted exclusively to public highway purposes." *Id*. at 143, 403 P.2d at 567. The court

9

concluded that the landowner's sign "constituted an encroachment thereon and a violation of federal regulation." *Id*. at 144, 403 P.2d at 568. There is no contention in this case that the federal regulations at issue in *State ex rel. Burns* applied when the 1940 Deed was issued.

This Court has not resolved the issue of whether, under Idaho law, the owner of land subject to an easement for a highway, road, or street can make use the land subject to the easement as long as it does not interfere with the free flow of traffic. In *City of Nampa v. Swayne*, 97 Idaho 530, 547 P.2d 1135 (1976), we noted a conflict in this Court's decisions, with some holding that the landowner could do so and other cases indicating to the contrary. *Id*. at 533, 547 P.2d at 1138. We did not resolve that legal issue in *City of Nampa* because the encroachments involved in that case actually did interfere with the lawful and usual use of the highway surface. *Id*.

We addressed the difference between a railroad right of way and a canal right of way in *Coulsen v. Aberdeen-Springfield Canal Co.*, 47 Idaho 619, 277 P. 542 (1929). The plaintiff had recovered a judgment against the canal company for the value of the plaintiff's bull that died as a result of injuries sustained by it falling into a waste ditch or spillway controlled by the canal company. On appeal, one of the arguments raised by the canal company was that its grant of a right of way pursuant to federal law gave it the rights of an absolute owner, that it was entitled to the exclusive possession of the right of way, that the plaintiff's bull was trespassing, and that the canal company could only be liable for wantonly or willfully injuring it. The canal company contended "that by this grant [of a right of way] it acquired the same rights as railroads acquire under similar grants." 47 Idaho at 626, 277 P. at 544.

In rejecting that argument, the *Coulsen* court reasoned that the grant of a railroad right of way was substantially different from other grants for rights of way because of the character of the contemplated use. A railroad must have exclusive possession of and complete dominion over its right of way, enjoying the rights which usually attend fee ownership. That distinguished railroad rights of way from other rights of way, including that for the canal. The court stated as follows:

> A grant of land to a railroad for right of way purposes is substantially different from any like grant for other purposes. The character of the contemplated use makes it different. It is intended that the use by a railroad company will be perpetual and continuous. A railroad company performs a public service and is burdened with a public duty. In the performance of that duty it is held to the exercise of the highest degree of care, and the complete, convenient, and safe use

10

of its right of way requires that its possession be exclusive—a possession not shared with another; that it have complete dominion over its right of way and that it enjoy all those rights which usually attend the fee.

. . . .

Railroad rights of way are distinguished from other ways principally, if not entirely, by the difference in use. There is not the same necessity for exclusive possession of a right of way by canal companies as by railroads. The reasons for according to railroads the right to the exclusive possession are not applicable to canal companies. The use of right of way for a ditch or canal does not require the exclusive possession of, or complete dominion over, the entire tract which is subject to the "secondary" as well as the principal easements.

*Id*. at 626-27, 277 P. at 544-45 (citations omitted).

As stated above, because of the character of the contemplated use, the grant of a railroad right of way requires that the railroad company's possession be exclusive. "[A]n exclusive easement is an unusual interest in land; it has been said to amount to almost a conveyance of the fee." *Latham v. Garner*, 105 Idaho 854, 856, 673 P.2d 1048, 1050 (1983). "Because an exclusive grant in effect strips the servient estate owner of the right to use his land for certain purposes, thus limiting his fee, exclusive easements are not generally favored by the courts." *Id*.

Unlike a railroad right of way, an easement for a street, road, or highway is not granted for the exclusive use of a private entity. It is likewise not even granted for the exclusive use of the public entity owning the easement. "[A]ll roads, streets and highways are held in trust by the state and its political subdivisions for use by the public." *State ex rel. Rich v. Idaho Power Co.*, 81 Idaho 487, 506, 346 P.2d 596, 606 (1959). An easement for a highway right of way is not sufficiently similar to an easement for a railroad right of way to hold that the *Bowman* opinion applies to highway easements.

In *West v. Smith*, 95 Idaho 550, 511 P.2d 1326 (1973), the issue of whether an easement for a public road could extinguish littoral rights could have been, but was not, raised on appeal. The plaintiffs owned a lot that was littoral to Lake Coeur d'Alene. Their lot was crossed by an easement for a county road that ended in a turnaround at the lake where a ferry formerly docked. The easement extended down to the water's edge. The defendants owned a houseboat that was moored to pilings driven into the lake bed, and they had a catwalk from their houseboat to the road easement. In holding that the presence of the catwalk interfered with the plaintiffs' littoral rights, we stated:

11

The littoral owner's right of access to the lake, free from unreasonable interference, attaches to all points of his shoreline, and in the case before us, *the district court came to the undisputed conclusion that appellants' right to access to the lake was not extinguished by the county roadway easement.* A fixed structure connecting a houseboat to the shore, erected by a private person for his own benefit, that permanently and continuously cuts off the littoral owner's access to the lake at that point constitutes an unreasonable interference with the upland owner's littoral rights and may properly be enjoined.

95 Idaho at 555, 511 P.2d at 1331 (footnotes omitted; emphasis added). Although it may be reasonable to assume that had the *West* court disagreed with the district court's *undisputed* conclusion, it would have so indicated. However, the court merely stated that the district court's conclusion without expressly agreeing or disagreeing with it. We are now presented with the issue, and we hold that an easement for a public street, road, or highway that extends down to the ordinary high water mark of a navigable lake does not terminate the littoral rights of the landowner whose property is subject to the easement. That is consistent with the general law. "[L]and which is separated from water by a highway or street in which the landowner holds the fee . . . is riparian land, regardless whether the highway is dedicated to public use or to private use by a finite number of persons." 78 Am. Jur. 2d *Waters* § 40 (2002). In addition, had the State wanted to purchase the littoral rights when it acquired the easement under the 1940 Deed, it could have done so.

**B. Did the State's Placing of Fill Along the Shoreline to Widen and Straighten the Road Extinguish the Littoral Rights?**

The Land Board did not address the issue of whether the State's action in placing fill in the lake had any impact on their littoral rights. Based upon decisions from other jurisdictions, the district court held that the fill added to the lakebed along the shore belongs to the riparian owner. It therefore concluded that the State's action had no effect on the Landowners' littoral rights. The Land Board contends that the district court erred in passing on the ownership of the fill because that issue was not raised in the administrative proceedings. The Transportation Department contends that the fill remains impressed with the public trust.

In *Idaho Forest Industries, Inc. v. Hayden Lake Watershed Improvement District*, 112 Idaho 512, 521, 733 P.2d 733, 742 (1987), we held that "filled or otherwise drained trust land must remain impressed with the public trust." The lakebed below the ordinary high water mark

was public trust land before the fill was placed in the lake to widen and straighten the highway, and the fill placed on that public trust land is likewise public trust land.

The placing of the fill did not eliminate the Landowners' littoral rights. The effect of the fill was to move the water's edge away from the Landowners' properties. The Landowners would have to cross the fill, which is public trust land, to access the lake. Without the fill, littoral landowners would also have to cross public trust land in order to exercise their littoral rights when the water level is below the ordinary high water mark. "[O]ne of the basic rights enjoyed by owners of properties upon a navigable lake is the right to have access to the waters of such lake *at the low water mark*; this right is valuable and in many instances it is the controlling aspect of the value of such lands." *Driesbach v. Lynch*, 71 Idaho 501, 508, 234 P.2d 446, 450 (1951). Therefore, the fill placed on the lakebed by the State did not destroy the Landowners' littoral rights.

**C. Can the Denial of the Dock Permits Be Upheld on the Ground that the Docks Would Interfere with the Transportation Department's Right of Way?**

A Land Board regulation provides, "Nothing in these rules shall excuse a person seeking to make an encroachment from obtaining any additional approvals lawfully required by federal, local or other state agencies." IDAPA 20.03.04.020.03. It held that pursuant to such regulation the Landowners could not obtain dock permits without encroachment permits from the Transportation Department. The district court did not address this issue. Both the Land Board and the Transportation Department argue on appeal that the Landowners were required to obtain highway encroachment permits from the Department in order to obtain their requested dock permits.

The Transportation Department argues, "The ITD controls encroachments upon a state highway right-of-way, and Keenan and Lake CDA have no more right to encroach upon such a right-of-way without an ITD permit than a stranger to the title of their property." The Land Board argues that the Landowners needed encroachment permits from the Transportation Department and that "the Land Board is . . . free to deny a permit pending final approval from applicable governmental agencies."

The Transportation Department's regulations define an "encroachment" as "[a]ny authorized or unauthorized use of highway right-of-way or easements or the air space

immediately above the highway right-of-way." IDAPA 39.03.42.010.30. As explained above, there is no easement on the fill where the ramp from the proposed docks to the shore would rest. Thus, for there to be an encroachment, that portion of the fill would have to be part of the highway right of way. A "highway right-of-way" is defined as "[p]roperty rights to land generally designated for transportation purposes, open to the public, and under the jurisdiction of a Public Highway Agency." The land where the proposed ramps would rest is not "land generally designated for transportation purposes." It is currently designated as a bicycle/pedestrian trail and park.

"Appurtenant to his ownership of lake front property, the littoral landowner normally possesses certain littoral rights. These include the right of access to the water, and, subject to state regulation, the right to build wharves and piers in aid of navigation." *West v. Smith*, 95 Idaho 550, 554, 511 P.2d 1326, 1330 (1973) (footnotes omitted). The proposed docks would be out in the water, and the ramp connecting the docks would rest on that part of the shore waterward from the bicycle/pedestrian trail. That land is public trust land, is not part of a highway right of way, and therefore a highway encroachment permit was not required.[4]

## D. Did the District Court Err in Awarding Attorney Fees against the Land Board and the Transportation Department?

Pursuant to Idaho Code § 12-117, the district court awarded judgments against the Land Board and Transportation Department for court costs and attorney fees totaling $23,128.51. Both entities challenge that award on appeal. The version of Idaho Code § 12-117(1) that was in effect when the district court awarded court costs and attorney fees provided:

> Unless otherwise provided by statute, in any administrative or civil judicial proceeding involving as adverse parties a state agency . . . and a person, the court shall award the prevailing party reasonable attorney's fees, witness fees and reasonable expenses, if the court finds that the party against whom the judgment is rendered acted without a reasonable basis in fact or law.[5]

The statute requires that the person and the state agency be adverse parties. The Land Board first argues it "was not an adversary to the Applicants below; instead, the Land Board,

---

[4] There is nothing in the record indicating that the Land Board gave the Transportation Department or its predecessor an easement over this land or any right to control it.
[5] Effective March 4, 2010 the statute was amended. I.C. § 12-117(1) (Westlaw current through 2010 Reg. Sess.).

through IDL, merely provided a forum for the Applicants and the objectors to present their cases." If the agency does not participate in the merits of the appeal to the district court, then it and the person are not adverse parties, even if the agency made the decision being appealed. *Neighbors For Responsible Growth v. Kootenai County*, 147 Idaho 173, 177, 207 P.3d 149, 153 (2009); *Galli v. Idaho County*, 146 Idaho 155, 161, 191 P.3d 233, 239 (2008). In this case, the Lands Department did participate in the appeal seeking to defend its actions on the merits. Therefore, it was a party adverse to the Landowners.

To be subject to an award of attorney fees, the party adverse to the prevailing party must also have "acted without a reasonable basis in fact or law." I.C. § 12-117(1). The Land Board's decision certainly has the appearance of being arbitrary and capricious. In a two mile stretch of shoreline that included the locations of the Landowners' proposed docks, there were thirty other private docks. In addition, about two months earlier the Land Board had approved, over the objection of the Transportation Department, a dock permit for a property that had previously been part of the same parcel as the Landowners' properties. However, we have not previously expressly ruled that an easement for a public road that extends down to the ordinary high water mark does not extinguish the littoral rights of the servient estate. Therefore, we hold that the Land Board and Transportation Department did not act without a reasonable basis in fact or law in arguing against the Landowners' appeals to the district court.

We have held that "I.C. § 12-117 provides the exclusive basis upon which to seek an award of attorney fees against a state agency." *State v. Hagerman Water Right Owners, Inc. (HWRO)*, 130 Idaho 718, 723, 947 P.2d 391, 396 (1997). Because that statute also applies to the award of "witness fees and reasonable expenses," it would also provide the exclusive basis for awarding court costs. We therefore reverse the district court's award of court costs and attorney fees against the Land Board and Transportation Department.

**E. Are Landowners Entitled to an Award of Court Costs and Attorney Fees on Appeal Pursuant to Idaho Code § 12-117?**

The Landowners are not entitled to an award of court costs and attorney fees on appeal unless the Land Board and/or Transportation Department "acted without a reasonable basis in fact or law." I.C. § 12-117(1) (Westlaw current through 2010 Reg. Sess.). The district court held that the Landowners owned the fill placed in the lake to widen and straighten the road. The

Appellants did not act without a reasonable basis in fact or law in challenging that holding. We therefore do not award attorney fees on appeal to the Landowners.[6]

### III. CONCLUSION

We affirm the judgment of the district court vacating the Land Board's final order dated May 21, 2007, and we reverse the judgments against the Land Board and the Transportation Department for court costs and attorney fees. We do not award court costs or attorney fees on appeal.

Justices BURDICK, J. JONES, HORTON and J. Pro Tem REINHARDT **CONCUR**.

---

[6] We express no opinion as to whether the current version of Idaho Code § 12-117 would apply to this appeal. In 2010, the Legislature amended Idaho Code § 12-117 and made the amendment effective on March 4, 2010, and retroactive to May 31, 2009. The prior version of the statute provided that in appropriate cases a *court* could award "in any administrative or civil judicial proceeding." In *Rammell v. Idaho Department of Agriculture*, 147 Idaho 415, 210 P.3d 523 (2009), we held that the prior version of the statute did not authorize the administrative agency to award attorney fees because it was not a court, nor did it authorize a court hearing an administrative appeal to award attorney fees for proceedings in the administrative agency. *Id.* at 422-23, 210 P.3d at 530-31. In doing so, we stated, "the language of the statute reads 'in any administrative or civil judicial proceeding,' which could either mean (1) in any administrative proceeding or civil judicial proceeding, or (2) in any *administrative judicial proceeding* or civil judicial proceeding. We now hold that the statute means the latter . . . ." *Id.* A civil judicial proceeding would be a civil lawsuit filed in court, and an administrative judicial proceeding would be the appeal of an administrative proceeding to a court. In 2010, the legislature amended the statute to allow administrative agencies to award attorney fees under the statute. In doing so, it changed the wording so that the statute applies "in any administrative proceeding or civil judicial proceeding." I.C. § 12-117(1) (Westlaw current through 2010 Reg. Sess.). Because we defined the words "civil judicial proceeding" to mean civil lawsuits, which may not include appeals of administrative proceedings to a court, the statute as amended may not now apply to such appeals.